No. 18,381.

SAMUEL H. SONTAG *v.* RUSSELL E. ABBOTT, ET AL., D/B/A
THE ABBOTT LUMBER COMPANY, ET AL.
(344 P. [2d] 961)

Decided September 28, 1959.   Rehearing denied October 26, 1959.

Mr. Harry L. Silverman, Mr. Sheldon Silverman, for plaintiff in error.

Mr. Robert B. Lee, Mr. M. O. Shivers, Jr., for defendants in error Abbott, et al.

Mr. Walter S. Erwin, Mr. Richard N. Graham, for defendant in error Robert Herbertson, etc.

Mr. Richard N. Graham, for defendant in error Charles E. McNeil.

*En Banc.*

Mr. Justice Moore delivered the opinion of the Court.

This case involves conflicting claims between a mortgagee of real estate and holders of liens for labor and material on the mortgaged property. Plaintiff in error will be referred to by name, and defendants in error will be mentioned as lien claimants or by name.

The case was submitted to the trial court upon an agreed statement of facts from which it appears that on June 14, 1955, James E. King entered into a written contract with the Klawitters in which the latter agreed to sell to him Lots 19 and 20, Block 10, Stark Brothers Woodlawn Addition in Littleton, Colorado. At the time of signing the contract King paid $100.00 on the purchase price, and it was provided in the contract that $5,900.00 in cash be paid on delivery of the warranty deed, at which time a $2,000.00 note secured by a second mortgage would be executed by the purchaser. The contract provided, inter alia, that:

"Time is of the essence hereof, and if any payment or any other condition hereof is not made, tendered or performed by purchaser as herein provided, then this contract shall be void and of no effect, and both parties hereto released from all obligations hereunder, and all

payments made hereon shall be retained by the undersigned agent as liquidated damages; provided, however, that in event of such forfeiture any payment made hereunder shall be divided between said agent and seller, one-half thereof to the agent but not to exceed a sum equal to the regular commission and the balance to the seller."

July 27, 1955, King received from the Klawitters a warranty deed to said property. At the same time he executed and delivered his note for $10,000.00 to Samuel H. Sontag, and secured the same by a first deed of trust upon Lot 19 only, of the property above described. The trust deed was recorded July 28, 1955, and contained, in addition to the legal description of said Lot 19, the following language concerning the property covered: "together with improvements now thereon and improvements hereafter constructed thereon." The sum of $5,900.00 paid by King to the Klawitters at the time the deed to him was delivered was made from the moneys borrowed by him from Sontag. All but $104.00 of the balance of the so-called "construction loan" was paid out for construction purposes in the erection of improvements on said Lot 19.

July 26, 1955, the day prior to the execution and delivery of the warranty deed to King, he ordered building material and supplies from the partners doing business as Abbott Lumber Company, who sold the same to him with the understanding that they were to be used in the erection of improvements on Lot 19. The materials were delivered to the lot on July 26, 1955. Thereafter, additional materials were furnished on the order of King who failed to pay the full price thereof, and the Abbott Lumber Company filed a statement of lien for the sum of $2,868.08, being the balance due for materials which went into the improvements on the land. King abandoned the construction of the improvements before completion thereof and "a substantial sum of additional money was required to complete the said improvements."

Sontag foreclosed his first deed of trust on the premises through the public trustee, and, subsequent to the commencement of this action in the trial court, he has acquired title through a trustee's deed.

The instant action was filed by the partners doing business as the Abbott Lumber Company to foreclose their lien for materials. Sontag was made a defendant in the action and Herbertson and McNeil, who had filed liens for labor and material furnished by them in erecting improvements on the said Lot 19, were joined as defendants. The labor and materials furnished by Herbertson and McNeil were also supplied on the order of King.

Abbott Lumber Company alleged that their lien was superior to any right claimed by defendants, and the prayer of the complaint was for appropriate relief by foreclosure. The Findings, Order and Judgment entered by the trial court contains, inter alia, the following:

"The Court concludes, based upon the findings of fact, that the lien of Russell E. Abbott, Irene A. Wherry and Howard E. Abbott, doing business under the style and firm name of The Abbott Lumber Company, is superior to the lien of the first deed of trust recorded against the property naming Samuel H. Sontag as the beneficiary thereof. The Court concludes that the date the materials were ordered and delivered was prior to the recording of this deed of trust, and that the commencement of work under the decisions of this state is actually the date the materials were first delivered to the premises."

The lien claimants who were made defendants were upheld in their contention that their liens were superior to the lien of Sontag, and they were placed on an equal footing with the lumber company in so far as priority of liens is concerned. Sontag seeks review of this judgment by writ of error.

Counsel for Sontag contend that King, who held an option to purchase at the time he caused materials to be delivered by the lien claimant lumber company, was not an "owner" of the property within the meaning of the

statute (C.R.S. '53, 86-3-1) and he therefore could not burden the real estate with a material man's lien by ordering the delivery of building material on the property. They further argue, as ground for reversal, that the term "commencement of work" as used in the statute in determining the effective date of a mechanic's lien, means actual physical work or labor on the ground, which can readily be seen and recognized as the commencement of a building; that delivery of material to the lot in question was insufficient to amount to "commencement of work" and that no work was actually begun until after the recording of the deed of trust in favor of Sontag. They also argue that the lien of the deed of trust was a "purchase money" lien by reason of which it should be preferred.

C.R.S. '53, 86-3-1, generally provides that a lien shall be had for labor performed, services rendered, or material furnished.

C.R.S. '53, 86-3-3, provides, inter alia:

"Any lien provided for by this article shall extend to and embrace any additional or greater interest in any of such property acquired by such owner at any time subsequent to the making of the contract or the commencement of the work upon such structure and before the establishment of such lien by process of law, and shall extend to any assignable, transferable or conveyable interest of such owner or reputed owner in the land upon which such building, structure or other improvement shall be erected or placed."

Questions to be Determined.

First: *Where the holder of an option to purchase real estate causes building materials to be delivered thereon to thereafter be used in the construction of improvements on the land, and where the option thereafter ripens into fee ownership; is the optionee an "owner" of real estate within the coverage of the mechanic's lien law, and, as such, empowered to impress such a lien*

*upon the real estate to which he directs the delivery of building materials?*

This question is answered in the affirmative. We think that the opinion of this court in *The Home Public Market Company, et al. v. Fallis,* 72 Colo. 48, 209 Pac. 641, is decisive of the question. In that case Levy and Block held an option to acquire a lease on real estate in Denver, and, as such option holders, employed an architect for the construction of a building on said property. The architect prepared plans and specifications, etc., pursuant to said employment. The partners Levy and Block thereafter assigned their option to The Home Public Market Company, and the architect was discharged. He filed a mechanic's lien. This court in upholding the lien stated in pertinent part:

"It is contended that at the time defendant in error made his contract and performed the labor as architect, Levy and Block had no interest in the property by virtue of their option for a lease, to which a lien could attach. This contention cannot be maintained. *Before the completion of the building the option ripened into a ninety-nine year lease.* The Home Public Market Company took the assignment of the option and lease with full notice and knowledge of the contract of employment between Levy and Block and the defendant in error. The statute gives a lien upon whatever interest the owner had when the work was begun, and to another or greater interest whenever acquired before the lien is enforced, and any person having an assignable, transferable or conveyable interest shall be deemed an owner." (Emphasis supplied.)

Applying this principle to the instant case we point out that on July 26, 1955, King held a contract which obligated the Klawitters to sell real estate to him. The forfeiture clause in the contract, in legal effect, made King an optionee, since he was not obligated to purchase. No one questions the right of King to demand performance from the Klawitters on the date on which

he ordered materials and caused the same to be delivered.

Counsel for all the parties assumed that on July 26, 1955, the King contract with the Klawitters was in force; the trial court so considered it; and the stipulation of facts recites that the warranty deed was delivered July 27 "pursuant" to that contract. Thus the act of King in ordering and causing delivery of building materials to the premises was the act of an "owner" within the meaning of the mechanic's lien statute. King's act was two days prior to the recording of the deed of trust to Sontag, and one day prior to the execution and delivery thereof. The contract or option held by King at the time he ordered material "ripened" into fee title on the following day. The ruling of the trial court on this point was correct.

Second: *Under the mechanic's lien statute which provides that the liens created thereby "shall relate back to and take effect as of the time of the commencement of the work upon the structure or improvement"; does the delivery of building material to the real estate, for use thereon in the erection of improvements, amount to a "commencement of the work"?*

This question is answered in the affirmative. This court has interpreted "commencement of work" to mean date of furnishing materials in *International Trust Co. v. Clark Hardware Co.*, 66 Colo. 210, 180 Pac. 300. From the opinion in that case we quote the following pertinent language:

"It is further urged that the doctrine of relation under our statute applies only to contracts for labor, because the statute, section 6, provides for a relation 'back to the time of the commencement of the work,' the furnishing of materials not being mentioned. The provision is, however, that 'all liens established by virtue of this act shall relate back,' etc., and this broad and inclusive language must prevail as against a supposed limitation from the use of the word 'work.'

"Moreover, the statute refers to the commencement of *the* work, that is, the beginning of operations under the contract, and not to the labor of some mechanic or laborer.

\* \* \*

"It does not appear that the interpretation urged by counsel has ever been given to the statute, and we think it is not warranted by the language used."

The above case was followed in *International Trust Co. v. Lowe,* 66 Colo. 131, 180 Pac. 579, where it was held that the lien related back to the date of delivery of the first item. In *Park Lane Properties, Inc., et al. v. Fisher, et al.,* 89 Colo. 591, 5 P. (2d) 577, it was held that an architect's lien related back to the time of commencement of work on his plans and drawings for the proposed building, and was not limited to the time of commencement of actual work on the structure, reaffirming the broad construction of the term "commencement of work" as set forth in the *International Trust Company v. Clark,* supra, case.

Applying this interpretation of the statute to the facts of the instant case, we conclude that the lien of the lumber company related back to delivery of the first item of materials which was on July 26, 1955, a date prior to the execution and recording of the deed of trust of the mortgagee.

Third: *Does the contention of counsel for Sontag, that the trust deed was a "purchase money" lien entitle it to preference over those asserted by the mechanic's lien claimants?*

This question is answered in the negative. C.R.S. 1953, 86-3-6, provides in pertinent part that, "All liens, established by virtue of this article \* \* \* shall have priority over any and every lien or encumbrance subsequently intervening \* \* \*." If the legislature had intended to except a purchase money mortgage from this all-inclusive language, such exception would certainly have been made clear in the statute.

In *Darien v. Hudson,* 134 Colo. 213, 302 P. (2d) 519, this court stated, inter alia:

" * * * Mechanic's lien laws are designed for the benefit and protection of mechanics and others and should be construed in favor of lien claimants."

Since it was shown that the lumber company's lien attached at a time prior to the execution and recording of the purchase money mortgage, and since the statute gives the purchase money mortgagee no excepted and preferred status over other liens and encumbrances, the lien of the mortgage attached subject to the prior materialman's lien, and is consequently inferior to it.

The judgment is affirmed.

MR. JUSTICE FRANTZ not participating.