**Bankers Trust Company v. El Paso Pre-Cast Company; Lumberjack, Inc.; General Building Service & Supply, Inc.; Southwestern Supply Co.; Western States Machinery Co.; Acme Door Co. of Colorado; Davis Gas Company; Crossings, Inc.; Lloyd Cisneros Concrete & Excavating Company; and Bob Arnold Concrete Contractor**

## No. 27143

**El Paso Pre-Cast Co. v. The Breaks Land Corp., Bankers Trust Co., and G. L. Williams & Partners, Ltd., formerly Lovejoy & Williams**

(560 P.2d 457)

Decided February 22, 1977.                    Rehearing denied March 14, 1977.

Fairfield and Woods, Patrick F. Kenney, Peter F. Breitenstein, for Bankers Trust Company.

Wesley G. Davis, for El Paso Pre-Cast Company.

Dawson, Nagel, Sherman & Howard, Craig A. Christensen, for Lumberjack, Inc.

Mason, Reuler and Peek, P.C., William M. Peek, for General Building Service & Supply, Inc.

Preston, Altman & Parlapiano, Wm. David Lytle, for Southwestern Supply Co.

Robinson-Robinson, P.C., Wm. Hedges Robinson, Jr., for Western States Machinery Co.

Meadoff and King, Harold L. Meadoff, for Acme Door Co. of Colorado.

Carleno & Parkinson, P.C., Louis Parkinson, for Crossings, Inc.

Charles J. Haase, for Lloyd Cisneros Concrete & Excavating Company and Bob Arnold Concrete Contractor.

Donald E. King, for G. L. Williams & Partners, Ltd.

*En Banc.*

MR. JUSTICE LEE delivered the opinion of the Court.

These cases, consolidated on appeal, concern a priority dispute between Bankers Trust Company of New York (Bankers), beneficiary of a deed of trust, and the holders of several mechanics' liens on the same property. The El Paso County District Court found Bankers' interest junior to the interests of all but one of the lien claimants. We affirm the judgments.

The Breaks Land Corporation (BLC), owner of a Colorado Springs apartment project, hired Steven Jacobs and Associates (Jacobs), an architectural firm, in June 1972 to prepare preliminary plans and drawings for the project. BLC also hired Lovejoy & Williams, Inc. (now G. L. Williams & Partners, Ltd.), an engineering firm, to perform engineering services for the project. Neither Jacobs nor Lovejoy & Williams had a written contract with BLC.

BLC submitted Jacobs' plans and drawings to Bankers to obtain financing for the project. Bankers made the construction loan to BLC in mid-November 1972, which was secured by a deed of trust on the property, dated November 14, 1972, and recorded November 20, 1972.

BLC retained Cokany Construction Company (Cokany) as general contractor for the project, by a contract dated November 14, 1972.

However, Cokany did not obtain its Colorado license until March 22, 1973.

Pursuant to its loan agreement, Bankers disbursed approximately $1.27 million from November 1972 to January 1974. When BLC defaulted on its obligations, Bankers began proceedings to forclose its deed of trust through the public trustee. The public trustee sold the property at public sale on May 23, 1974, to Bankers, the sale was approved by order of the district court, and on December 30, 1975, Bankers received a public trustee's deed to the property.

El Paso Pre-Cast Company, a supplier of materials for the property, filed a complaint on February 6, 1974, to foreclose its mechanics' lien against the property. Bankers was named a party defendant and asserted a first lien under its deed of trust. It also challenged the constitutionality of the mechanics' lien statutes.

Work on the project substantially ceased on February 15, 1974. However, in late February and again on March 1, Lovejoy & Williams performed site inspections. It did not bill BLC for these unrequested site inspections, nor did it report its findings to BLC. Its last work billed to BLC occurred on February 8, 1974.

Lovejoy & Williams filed a lien statement on May 16, 1974. On April 4, 1975, numerous lien claimants, including Lovejoy & Williams, intervened in the action filed by El Paso Pre-Cast.

After trial, the district court ruled that the interests of ten lien claimants related back to a time prior to the filing for record of Bankers' deed of trust and thus were senior to Bankers' lien. The court denied Lovejoy & Williams' lien on the grounds that it had not been timely filed. Bankers' challenge to the constitutionality of the mechanics' lien statutes was rejected by the court.

Bankers appeals from the district court judgment in favor of the lien claimants, contending that its deed of trust is prior to all of the mechanics' liens, and that the Colorado mechanics' lien procedures violate due process. Lovejoy & Williams appeals the denial of its lien for failure to timely file a lien statement.

I.

Section 38-22-106(1), C.R.S. 1973, concerning priority of mechanics' liens, provides:

"All liens established by virtue of this article shall relate back to the time of the commencement of work under the contract between the owner and the first contractor, or, if said contract is not in writing, then such liens shall relate back to and take effect as of the time of the commencement of the work upon the structure or improvement, and shall have priority over any lien or encumbrance subsequently intervening * * *."

The district court ruled that the commencement of work by Jacobs and by Lovejoy· & Williams before Bankers filed its deed of trust

established the priority date for all valid mechanics' liens on the project. Thus, under the foregoing statute, these liens had priority over Bankers' deed of trust.

Bankers argues in the first instance that determination of the priority date depends upon whether there was a written contract between the owner and the "first contractor"; and that since here there was a written contract between Cokany and BLC, the owner, the priority date related back to the commencement of the work under the written contract. It follows, it is argued, that since no work was performed under the written contract until long after Bankers' deed of trust was recorded, the lien of the deed of trust was therefore prior to the interests of the mechanic-lien claimants. We do not agree.

Regarding the contention that Cokany, not Jacobs or Lovejoy & Williams, was the "first contractor," the mechanics' lien statutes do not define "first contractor." However, section 38-22-108(1) defines principal and subcontractors as follows:

"Every person given a lien by this article whose contract, either express or implied, is with the owner or reputed owner or his agent or other representative, is a principal contractor and all others are subcontractors * * *." Based on this statute, every lienholder is a contractor, either a principal contractor or subcontractor, and this does not depend on whether the contract is in writing. And section 38-22-101(1) expressly includes architects and engineers in the class of those eligible for mechanics' liens. Consequently, Jacobs and Lovejoy & Williams were both contractors within the contemplation of section 38-22-106(1).

Whether one is a "first contractor" does not depend upon whether the contract is in writing, but rather at what time the contract, either express or implied, is entered into with the owner. There is no dispute that Jacobs' and Lovejoy & Williams' contracts with BLC were prior to Cokany's written contract. Thus, Cokany was not the "first contractor" whose work set the priority date for mechanics' liens.

Alternatively, Bankers argues that, even if Jacobs or Lovejoy & Williams is determined to be the "first contractor," the priority date is the commencement of work upon the structure or improvement. Section 38-22-106(1). In this context, Bankers contends: "work" means "lienable work"; and the commencement of work upon the structure or improvement means the start of actual, on-site construction; since the work of the architect or engineer, done before November 20, 1972 (the date of recording of the deed of trust), was not done on the structure or improvement, such work was not lienable work; on-site, actual construction did not start until after Bankers' deed of trust was recorded. Therefore, in the view of Bankers, the trial court erred in granting a first lien to the mechanic-lien claimants.

The district court assumed without deciding, and Bankers agreed, that "work" in the context of section 38-22-106(1) means lienable work. Assuming the correctness of this definition, it is clear by decisions of this court that an architect's and engineer's preliminary work is lienable. *Sontag v. Abbott*, 140 Colo. 351, 344 P.2d 961, citing *Park Lane v. Fisher*, 89 Colo. 591, 5 P.2d 577; Annot., 28 A.L.R.3d 1014. Consequently, Jacobs and Lovejoy & Williams performed "work" before November 20, 1972, the record date of Bankers' trust deed.

■ We have construed "commencement of the work" broadly, in accord with the principle that mechanics' lien laws should be construed in favor of lien claimants. *3190 Corp. v. Gould*, 163 Colo. 356, 431 P.2d 466. Thus, *International Trust Co. v. Clark Co.*, 66 Colo. 210, 180 P. 300, interpreted that phrase to include furnishing of materials as well as labor. More on point, *Park Lane v. Fisher, supra*, held that an architect's lien related back to the commencement of his work upon the plans and drawings.

■ We recognize that the architect in *Park Lane* had a written contract, so that his lien related back to the commencement of work "under the contract" rather than "upon the structure or improvement." But in *Sontag v. Abbott, supra*, where the lien claimant delivered building materials upon an oral request, we cited *Park Lane, supra*, as well as *International Trust Co., supra*, in support of our holding that delivery of materials constitutes "work upon the structure or improvement." In accord with these cases and the policy of mechanics' lien law, we hold that Jacobs' and Lovejoy & Williams' services here constitute "commencement of the work upon the structure or improvement" under section 38-22-106(1).

As a result, the district court correctly ruled that the interests of all lienholders were superior to Bankers' interest under its deed of trust.

## II.

Bankers next argues that the Colorado mechanics' lien laws, article 22 of title 38, C.R.S. 1973, deprive construction lenders like itself of property without due process of law. Bankers accurately points out that lien statements are filed *ex parte*, without prior hearing, and contain conclusory allegations of entitlement to a lien. Section 38-22-109(1), (2), (3), C.R.S. 1973.[1] The lien may be extended indefinitely by filing an affidavit stating that the improvement has not been completed. Section 38-22-109(8), C.R.S. 1973.

As a result, claims Bankers, the filing of a mechanics' lien without prior notice or hearing creates a cloud on the title to the property and on any prior deeds of trust to the property. The deed of trust beneficiary may

---

[1] Now section 38-22-109(3), C.R.S. 1973 (1976 Supp.).

lose both the priority of its interest and the unrestricted use and enjoyment of its deed. The trust deed becomes difficult to sell, even at a reduced price. Bankers concludes this constitutes a taking of property in violation of the due process clause of the Fourteenth Amendment to the United States Constitution.

■ Viewing the term "property" in the broad sense, not every deprivation triggers the protections of due process. Due process applies only to deprivation of significant "property" interests. *Boddie v. Connecticut*, 401 U.S. 371, 91 S.Ct. 780, 28 L.Ed.2d 113. Thus, in *Sniadach v. Family Finance Corp.*, 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349, the United States Supreme Court found freezing of wages by garnishment to be a significant taking. Similarly, in *Fuentes v. Shevin*, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556, the protections of due process attached to the seizure of household goods under a writ of replevin.

■ The Supreme Court has spoken only indirectly on mechanics' liens by its summary affirmance of *Spielman-Fond, Inc. v. Hanson's, Inc.*, 379 F.Supp. 997 (D. Ariz. 1973), *aff'd*, 417 U.S. 901, 94 S.Ct. 2596, 41 L.Ed.2d 208. A summary affirmance is, nonetheless, a decision on the merits, having precedential value. *Hicks v. Miranda*, 422 U.S. 332, 95 S.Ct. 2281, 45 L.Ed.2d 223. Indeed, several lower federal courts have given great weight to the affirmance of *Spielman-Fond. Matter of Northwest Homes of Chehalis, Inc.*, 526 F.2d 505 (9th Cir. 1975), *cert. denied*, 425 U.S. 907, 96 S.Ct. 1501, 47 L.Ed.2d 758; *In re Thomas A. Cary, Inc.*, 412 F. Supp. 667 (E.D. Va. 1976); *Brook Hollow Associates v. J. E. Greene, Inc.*, 389 F. Supp. 1322 (D. Conn.), *vacated*, 535 F.2d 1240 (2d Cir. 1975).

We therefore regard the holding of *Spielman-Fond, supra*, as especially instructive. In considering whether the filing of a mechanics' lien against real property constituted a taking of a significant property interest, the court there observed:

"Here, a lien is filed against the property and clouds title. It cannot be denied that the effect of such lien may make it difficult to alienate the property. If the plaintiffs can find a willing buyer, however, there is nothing in the statutes or the liens which prohibits the consummation of the transaction. Even though a willing buyer may be more difficult to find, once he is found there is nothing to prevent plaintiffs from making the sale to him. The liens do nothing more than impinge upon economic interests of the property owner. The right to alienate has not been harmed * * *."

For these reasons, the court found no deprivation of constitutional dimensions and thus no due process violation. We agree with the rationale of that case.

Other federal and state courts have reached the same conclusion. *Cook v. Carlson*, 364 F. Supp. 24 (D. S.D. 1973); *Tucker Door & Trim Corp. v. Fifteenth St. Co.*, 235 Ga. 727, 221 S.E.2d 433; *Connolly*

*Develop. Inc. v. Superior Court*, 41 Cal.App.3d 543, 116 Cal. Rptr. 191. We have considered the cases holding mechanics' liens and similar prejudgment attachment of realty to be significant deprivations, and have found their reasoning sparse and unpersuasive.[2]

In addition, the cases holding mechanics' liens and other prejudgment attachments unconstitutional have uniformly involved the rights of the attached property's owner. Here, in contrast, Bankers did not own the property subject to the liens but merely held a first deed of trust to this property.[3] At most, the filing of the mechanics' lien statements makes it possible that, after hearing under section 38-22-113, Bankers would lose its priority. In short, only after proper notice and hearing could Bankers suffer a constitutionally significant deprivation.

To this point, we have considered only the interests of property owners, holders of trust deeds, and mechanics' lien claimants. However, the mechanics' lien filing procedure serves the interests of another group, prospective purchasers of the subject property. Lien filing provides them notice of potential claims against the property, much like the filing of a lis pendens notice under section 38-35-110, C.R.S. 1973, and C.R.C.P. 105(f). In view of this similarity, we note the ruling in *Empfield v. Superior Court*, 33 Cal.App. 3d 105, 108 Cal. Rptr. 375, that a lis pendens does not constitute a taking subject to due process.

To require the full panoply of due process protections before filing a lien statement would impair the notice function of the lien statements. In the interval between the time of the work, the furnishing of materials or services giving rise to the lien claim and the hearing on the lien, prospective purchasers would have no notice of the potential lien. The very "deprivation" complained of by Bankers, the difficulty in alienating property against which a lien has been filed, indicates the efectiveness and importance of the notice function of lien statements.

### III.

The district court found Lovejoy & Williams' lien statement was not timely filed and therefore denied its claim.

---

[2] *Terranova v. Avco Financial Servs.*, 396 F. Supp. 1402 (D.Vt. 1975); *Hutchison v. Bank of N.C.*, 392 F. Supp. 888 (M.D. N.C. 1975); *Bay State Harness Horse R. & B. Ass'n v. PPG Indus. Inc.*, 365 F. Supp. 1299 (D. Mass. 1973); *Gunter v. Merchants Warren Nat'l Bank*, 360 F. Supp. 1085 (D. Me. 1973); *Clement v. Four N. State St. Corp.*, 360 F. Supp. 933 (D. N.H. 1973); *Roundhouse Constr. Corp. v. Telesco Masons Sup. Co.*, 168 Conn. 371, 362 A.2d 778, *vacated and remanded*, 423 U.S. 809, 96 S.Ct. 20, 46 L.Ed.2d 29, *reaff'd*, 170 Conn. 155, 365 A.2d 393; *Barry Properties v. Fick Bros. Roofing Co.*, 277 Md. 15, 353 A.2d 222 (Md. Ct.App. 1976).

[3] As heretofore noted, during the pendency of these proceedings Bankers foreclosed its deed of trust and obtained title to the property.

Under section 38-22-109(5),[4] Lovejoy & Williams was required to file its statement before the expiration of three months after the day on which the last labor was performed by it. By its pretrial admission, the last work performed by it was on February 8, 1974. The lien statement was filed on May 16, 1974, for an unpaid balance due in the amount of $6,697.95.

Contrary to its admission, Lovejoy & Williams claimed at trial that it had performed site inspections in late February 1974 and on March 1, 1974, either of which would extend time for filing of its lien statement beyond May 16, 1974, the date of its filing. The district court found that it had failed to sustain its burden of proof that the site inspections were lienable work which would extend the time for filing its lien. *Graham v. Brenden*, 142 Colo. 88, 349 P.2d 702. The evidence supports this finding and we will not disturb it on review. *Moseley v. Smith*, 170 Colo. 177, 460 P.2d 222. The ruling of the court in denying the lien claim of Lovejoy & Williams was therefore correct.

The judgments are affirmed.

---

[4] Now section 38-22-109(5), C.R.S. 1973 (1976 Supp.).