**PRINTZ SERVICES CORPORATION, a Colorado corporation d/b/a T.L. Printz Constructors, Plaintiff–Appellee and Cross–Appellant,**

v.

**MAIN ELECTRIC, LTD.; Sprehe Interior Construction, Inc.; Connie J. Sullivan–Brown d/b/a C.J. Masonry, Defendants–Appellants and Cross–Appellees.**

**and**

**Placer Gold, Inc., a Colorado corporation; Rainbow Stew, Inc.; and Joel D. Roberts, Defendants–Appellees and Cross–Appellants,**

**and**

**Southern Group Inc., Defendant.**

**Nos. 95CA1664, 95CA1688.**

Colorado Court of Appeals, Div. IV.

April 17, 1997.

Rehearing Denied July 3, 1997.

Certiorari Granted Jan. 20, 1998.

Holland & Hart, Edward H. Flitton, III, David S. Prince, Colorado Springs, for Plaintiff–Appellee and Cross–Appellant.

Warren, Mundt & Martin, P.C., Robert B. Warren, Colorado Springs, for Defendant–Appellant and Cross–Appellee Main Electric, Ltd.

Hendricks, Hendricks & Shakes, P.C., David L. Shakes, Colorado Springs, for Defendants–Appellants and Cross–Appellees Sprehe Interior Construction, Inc. and Connie J. Sullivan–Brown, d/b/a C.J. Masonry.

Michael R. Bromley, P.C., Michael R. Bromley, Colorado Springs, for Defendants–Appellees and Cross–Appellants.

Opinion by Judge KAPELKE.

In this mechanics' lien foreclosure action, plaintiff, Printz Services Corp. (Contractor), and defendants Main Electric, Ltd., Sprehe Interior Construction, Inc., and Connie J. Sullivan–Brown d/b/a C.J. Masonry (Subcontractors) challenge the trial court's determination that their mechanics' liens are junior to deeds of trust held by defendants Joel D. Roberts and Placer Gold, Inc. (Sellers). Contractor also challenges the trial court's ruling that receipt of payment by Southern Group, Inc., (Owner) was not a contractual condition precedent to any liability by Contractor to Subcontractors. We affirm in part, reverse in part, and remand for further proceedings.

These consolidated cases arose from the sale and development of a property for a casino. On January 2, 1992, Roberts sold the property to Placer Gold and took back a deed of trust that was recorded the same day. Placer Gold, in turn, sold the property to Owner on March 27, 1992, and received a deed of trust which was recorded on March 31, 1992. Owner later defaulted, and Placer Gold foreclosed on its deed of trust and received a public trustee's deed in 1993.

During February and March 1992, Contractor was preparing a proposal for the development of the property into a casino. On February 25, 1992, Contractor met with an architect and requested that he prepare initial sketches showing possible designs for the building and estimating square footage resulting from each design. The architect prepared the sketches and accompanying notes the following day.

Contractor sent Owner a letter containing a guaranteed price quotation on March 24, 1992. Contractor signed a contract with the architect on March 30, 1992. The contract provided for payment of a "stipulated sum" of $500 for the work the architect had already performed. On April 1, 1992, Contractor and Owner signed a general contract for the project.

Contractor entered into agreements with various subcontractors. All Subcontractors with the exception of Main Electric signed Contractor's preprinted subcontract form, which contained the following provisions:

> Contractor shall make payment on or before the 25th day of the next month following receipt of the Payment Request provided like payment has been made by Owner to Contractor.

> . . . .

> Contractor shall make final payment to Subcontractor after work is complete and accepted by Owner and Architect provided like payment shall have been made by Owner to Contractor. . . .

Contractor and Subcontractors filed mechanics' liens on the property. In this foreclosure action following Owner's default, Sellers, Contractor, and Subcontractors filed cross-motions for summary judgment on the issue of priority as between the mechanics' liens and Sellers' deeds of trust.

All parties agreed that the January 2, 1992, deed of trust enjoyed priority over all other claims. However, Contractor and Subcontractors argued that the mechanics' liens had priority over the second deed of trust by reason of the architect's having performed lienable work on the project before that deed of trust was recorded. The trial court granted summary judgment in favor of Sellers, finding that any work performed before March 31, 1992, was commissioned by Contractor in connection with its preparation of its own proposal, and was not performed at the request of Owner or Sellers.

In the first phase of a bifurcated trial, the court ruled that Subcontractors' mechanics' liens against the property were valid, but junior to Sellers' deeds of trust. The court also held that, although Main Electric had no written subcontract with Contractor, it had performed services enhancing the value of the property in the amount of $50,929.74. The court therefore determined that Main Electric had a valid mechanic's lien in that amount.

Following the second stage of trial, the court found in favor of Subcontractors on

their contract claims against Contractor. With respect to the claim of Main Electric, the court based its judgment on the theory of *quantum meruit.* The court rejected Contractor's defense that the "pay when paid" clause of the subcontracts relieved it of the obligation to pay Subcontractors because it had not been paid in full by Owner. The court ruled that the contract language was not sufficiently clear to make payment by Owner to Contractor a condition precedent to Contractor's obligation to pay Subcontractors, or to shift the burden of the risk of Owner's nonpayment from Contractor to Subcontractors.

## I.

Contractor and Subcontractors contend that the trial court erred in according priority to Sellers' March 31, 1992, deed of trust over the mechanics' liens. We disagree.

Section 38–22–106(1), C.R.S. (1982 Repl. Vol 16A) provides, in pertinent part:

All liens established by virtue of this article shall relate back to the time of the commencement of work under the contract between the owner and the first contractor, or, if said contract is not in writing, then such liens shall relate back to and take effect as of the time of the commencement of the work upon the structure or improvement . . . .

■ The statute presupposes the existence of either a written or oral agreement between the first contractor and the owner or lessee in order for a lien to attach. *See Bankers Trust Co. v. El Paso Pre–Cast Co.,* 192 Colo. 468, 560 P.2d 457 (1977) ("first contractor" status depends on which contractor first entered into an express or implied contract with owner); *C & W Electric, Inc. v. Casa Dorado Corp.,* 34 Colo.App. 117, 523 P.2d 137 (1974) (work not performed "at the instance of the owner" could not support a mechanic's lien); *General Growth Development Corp. v. A & P Steel, Inc.,* 678 F.Supp. 243 (D.Colo.1988) (priority dated from the time owner informed contractor it had been awarded the contract).

■ Here, Contractor and Subcontractors base their claims of priority on architectural work performed in late February 1992, well before Owner executed its written contract with Contractor on April 1, 1992, and well before March 24, 1992, the date Contractor claimed he received an oral "go ahead" from Owner. The undisputed facts in the record establish that the architect did not begin his work at the instance of Owner or a lessee, but rather solely at the request of Contractor.

Contractor and Subcontractors argue that even though the architect's work predates the prime contract with Owner, because such a contract was eventually signed, the mechanics' liens relate back to the date work was first commenced by the architect. We disagree.

In *C & W Electric, supra,* a subcontractor performed a substantial portion of its work on a modular home before the owner purchased the home and moved it to his property. The subcontractor performed the remainder of the work on the home after its purchase. While there was no dispute as to the subcontractor's entitlement to a lien for the work performed after the purchase, the court held that no lien could attach for work done before the owner bought the home. The court reasoned that it was "the affirmative contractual relation of the owner of the property to the improvement made or work performed upon which the claimant's right to the lien is based." *C & W Electric, Inc., v. Casa Dorado Corp., supra,* 34 Colo.App. at 120, 523 P.2d at 139. *See also Seracuse Lawler & Partners v. Copper Mountain,* 654 P.2d 1328 (Colo.App.1982) (property of owner is not subject to a mechanic's lien for architect's services unless the owner or an agent of owner has contracted for the services).

The circumstances here are analogous to those in *C & W Electric.* Even though Contractor and Owner later executed a contract which included a provision for payment of the architect for his preliminary services, no lien could attach for work done before Contractor's agreement with Owner came into force. The architect therefore could not have been the "first contractor" under § 38–22–106(1). Moreover, there was no evidence in the record that any other work was performed be-

fore April 1, 1992, the date of Contractor's written contract with Owner.

Contractor and Subcontractors further argue that under *Sontag v. Abbott,* 140 Colo. 351, 344 P.2d 961 (1959), their lien priority claims "ripened" once Contractor and Owner executed their contract. We disagree.

*Sontag* holds that work commissioned by a person with an option to buy property may still support a lien priority date so long as the option later "ripens" into fee ownership. Nevertheless, the critical question remains whether commissioning the work "was the act of an 'owner' under the mechanic's lien statute." *Sontag v. Abbott, supra,* 140 Colo. at 357, 344 P.2d at 964. Here, as noted, there is no dispute that Contractor, not Owner, commissioned the architect's work. Thus, reliance on *Sontag* is misplaced.

In view of these authorities, we conclude the trial court did not err in determining that, as a matter of law, Placer Gold's March 31, 1992, deed of trust had priority over the mechanics' lien claims.

## II.

Contractor next contends that the trial court erred in holding it liable to Subcontractors Sprehe Interior Construction and C.J. Masonry for amounts due on the subcontracts, despite the presence of "pay when paid" clauses in those subcontracts. We agree.

■ Absent a contrary contractual provision, the failure of an owner to pay a prime contractor does not relieve the prime contractor of the obligation to pay a subcontractor. *David C. Olson, Inc. v. Denver & Rio Grande Western R.R. Co.,* 789 P.2d 492 (Colo.App.1990).

■ Here, the form agreement between Contractor and Subcontractors stated that Contractor would pay the respective subcontractor "provided like payment shall have been made by Owner to Contractor." Contractor argues that this language is sufficiently unambiguous to render its obligation to pay Subcontractors conditional upon its having received full payment from Owner, an event which did not occur.

A stipulation in a contract may be a condition or a promise, depending on the intention of the parties. Where those intentions are in doubt, courts resolve the doubt in favor of finding a promise rather than a condition. *Charles Ilfeld Co. v. Taylor* 156 Colo. 204, 397 P.2d 748 (1964). This rule of construction is based on the policy of avoiding the harsh effect of forfeiture which may result from the failure of a condition precedent. *Rohauer v. Little,* 736 P.2d 403 (Colo.1987).

The parties here contend that the effect of a "pay when paid" clause in a construction subcontract is an issue of first impression in Colorado. However, in fact, our supreme court considered the effect of a similar clause in *Orman v. Ryan,* 25 Colo. 383, 55 P. 168 (1897).

The subcontract at issue in *Orman* provided that payment from a contractor to a subcontractor would be made "as soon after the 15th day of the succeeding month as the [contractor] shall have received the money for said work from the [owner]." Our supreme court held that: "The language used clearly and explicitly makes receipt of the money by [the contractor] a condition precedent to any liability on [its] part to pay for the work...." *Orman v. Ryan, supra,* 25 Colo. at 388, 55 P. at 170.

Comparing the language at issue in *Orman* with the clause in question here, we find that the phrase "provided like payment shall have been made by Owner to Contractor" even more clearly establishes a condition precedent than does the language used in *Orman.*

We are aware that courts in other jurisdictions have ruled that, in order to constitute a valid condition, a "pay when paid" clause in a construction subcontract must contain more definite language than that used here. We further recognize that by modern standards *Orman* represents a minority position. *See, e.g., Koch v. Construction Technology, Inc.,* 924 S.W.2d 68 (Tenn.1996) (reviewing cases).

Nevertheless, despite its vintage, *Orman* controls our decision here. We therefore conclude that the trial court erred in holding that the "pay when paid" clause in Contractor's form subcontract did not relieve Contractor of any obligation to pay Subcontractors absent Contractor's receipt of full payment from Owner. Accordingly, we re-

verse the awards in favor of Sprehe Interior Construction, Inc., and C.J. Masonry on their contract claims against Contractor.

## III.

Contractor also contends that the trial court erred in finding that, because no written subcontract existed between Contractor and Subcontractor Main Electric, Contractor was nevertheless liable to Main Electric under the theory of *quantum meruit*. In Contractor's view, both parties admitted the existence of an express contract for the performance of the work by Main, thus making the trial court's resort to the equitable theory of *quantum meruit* inappropriate. Again, we agree.

■ If an express contract exists and an implied contract is alleged to co-exist and relate to the same subject matter, the provisions of the express contract supersede the alleged terms of the implied contract, unless the implied agreement is based on conduct subsequent to, and not covered by, the original agreement. *Scott Co. v. MK–Ferguson Co.*, 832 P.2d 1000 (Colo.App.1992).

Here, during the contract claim stage of trial, both Contractor and Main Electric asserted the existence of an express contract between them. Main Electric's president testified that he believed he had executed a written contract similar to the form contracts executed by the other subcontractors. Both parties acknowledged the existence of an express contract, and neither alleged there was an implied contract. Moreover, Main Electric did not seek recovery on a *quantum meruit* theory. Thus, because the existence of an express contract was undisputed, the trial court's award to Main Electric on a *quantum meruit* theory was erroneous.

Ordinarily, the distinction between enforcement of an oral contract and a *quantum meruit* award would make no substantive difference and would not require remand. *See Klipfel v. Neill*, 30 Colo.App. 428, 494 P.2d 115 (1972). However, here, the parties dispute whether the "pay when paid" provision formed part of their express agreement. The trial court made no findings regarding this dispute of fact.

We therefore conclude that, in light of our holding that the "pay when paid" clause in Contractor's standard subcontract constitutes a condition precedent to its obligation to pay Subcontractors, remand is necessary for a determination whether such a provision was part of the agreement between Contractor and Main Electric.

## IV.

Because we affirm the trial court's judgments regarding the priority of Sellers' deeds of trust over the mechanics' lien claims, we do not reach Sellers' contentions that the liens are invalid. Likewise, because we reverse the trial court's award to Main Electric and remand, we do not reach Main Electric's contention that the trial court erred in setting the amount of that award.

The part of the judgment determining that the deeds of trust have priority over the mechanics' liens is affirmed. The part of the judgment awarding contract damages to Subcontractors Sprehe Interior Construction, Inc., and C.J. Masonry is reversed. The part of the judgment awarding *quantum meruit* damages to Subcontractor Main Electric is reversed, and the cause is remanded for further proceedings in accordance with this opinion.

HUME and BRIGGS, JJ., concur.