20CA1513 Ward Petroleum v Kent 01-06-2022 COLORADO COURT OF APPEALS Court of Appeals No. 20CA1513 Weld County District Court No. 19CV30538 Honorable Todd Taylor, Judge Ward Petroleum Corporation, individually and as assignee of Wolf Resources, LLC; and Ward Energy Investments, LLC, individually and as assignee of Wolf Resources, LLC, Plaintiffs-Appellants, v. Gregory Kent; Dacono Investments, Inc., a Colorado corporation; and General Land Development Corporation, LLC, a Colorado limited liability company, Defendants-Appellees. JUDGMENT AFFIRMED AND CASE REMANDED WITH DIRECTIONS Division VI Opinion by JUDGE WELLING Fox and Johnson, JJ., concur NOT PUBLISHED PURSUANT TO C.A.R. 35(e) Announced January 6, 2022 Spencer Fane LLP, Troy R. Rackham, Jacob F. Hollars, Denver, Colorado, for Plaintiffs-Appellants Woods|Aitken, LLP, Alvin M. Cohen, Denver, Colorado, for Defendants-
Appellees
1 ¶ 1 Plaintiffs, Ward Petroleum Corporation and Ward Energy Investments, LLC (collectively, Ward), appeal the trial court’s summary judgment decision in their contract dispute arising out of a purchase agreement with defendant Gregory Kent. We affirm. I. Background ¶ 2 To best understand the events giving rise to this litigation, we will start from the beginning. Over twenty years ago, Gregory Kent purchased two parcels of property: Section 1 and Section 34. In 2008, Kent conveyed the parcels to a limited liability entity and then from that limited liability entity to Dacono Investments, Inc.
1 (Dacono); Kent was the sole shareholder of both entities. In 2009, Dacono obtained a $4.25 million bank loan and mortgaged Section 1 as collateral for the loan. ¶ 3 In 2010, Dacono began to fall behind on the loan payments. In June 2010, Kent attempted to sever the mineral rights of Section 1 by executing a mineral deed conveying the Section 1 1 In at least one of the documents in the record Dacono Investments, Inc., is referred to as “Dakono Investments, Inc.” This discrepancy isn’t identified or raised by the parties as an issue in their briefing in this court, so we don’t address it further. 
2 mineral interests from Dacono to himself; the mineral interest deed was recorded. Kent didn’t have permission from the bank to sever the mineral interests from the mortgaged parcel. ¶ 4 In 2012, the bank declared a default on the loan and the court authorized the sale of Section 1 through a foreclosure auction. At the foreclosure auction, the bank purchased the property. The bank’s confirmation deed contained no reservation of mineral rights for Section 1 to Kent, meaning the bank’s deed didn’t reflect Kent’s attempt to sever the Section 1 mineral rights following Kent’s pledge of the property to the bank. ¶ 5 Now we turn to the events giving rise to this litigation. In 2018, Kent agreed to sell the Section 34 mineral rights to a company called Wolf Resources. After purchasing the Section 34 mineral rights from Kent, Wolf Resources offered to also purchase, and Kent agreed to sell, the Section 1 mineral rights. Wolf Resources then discovered a title issue that revealed that Kent didn’t own the Section 34 mineral rights that Wolf Resources had purchased from him. It isn’t clear from the record how the title problems involving Section 34 were discovered by Wolf Resources. After discovering that Kent didn’t own the Section 34 mineral rights, 
3 Wolf Resources and Kent amended the purchase agreement for the Section 1 mineral rights to reflect a price reduction equivalent to what Wolf Resources had paid for the Section 34 mineral rights (that Kent didn’t own). ¶ 6 The amended purchase agreement for the Section 1 mineral rights contains two clauses that are relevant here. First, the purchase agreement states that Wolf Resources has no other claims against Kent and waives and forever releases Kent from any claims, known or unknown. Second, the purchase agreement states that Wolf Resources is taking title without any warranty and that any claims against Kent are limited by the terms of the mineral interest deed and the purchase agreement. And the mineral deed for Section 1 incorporated into the purchase agreement contains a six-
month claim limitation. The purchase agreement was executed on May 3, 2018. The mineral deed was executed on May 14, 2018. ¶ 7 After Wolf Resources purchased the Section 1 mineral rights from Kent, Wolf Resources sold them to Ward — the plaintiffs in this case. After the conveyance from Wolf Resources to Ward was complete, Ward discovered that Kent also didn’t own the Section 1 
4 mineral rights that he purported to sell to Wolf Resources (and that Wolf Resources then sold to Ward). ¶ 8 In May 2019, Wolf Resources assigned any and all claims it had against Kent relating to the sale of the Section 1 mineral rights to Ward. In June 2019, Ward commenced this action against Kent alleging fraud by misrepresentation, concealment or nondisclosure, negligent misrepresentation, violation of the Colorado Consumer Protection Act, breach of contract, and unjust enrichment. ¶ 9 Kent filed a motion for summary judgment on all of Ward’s claims. The trial court granted summary judgment in favor of Kent, concluding that the plain language of the purchase agreement and the mineral deed between Wolf Resources and Kent barred Ward’s claims. Ward appeals. II. Analysis ¶ 10 Ward raises four contentions on appeal. Specifically, Ward contends that the trial court erred by (1) failing to recognize that Kent breached the covenant of seisin; (2) granting Kent’s summary judgment motion on Ward’s unjust enrichment claim; (3) granting Kent’s summary judgment motion on Ward’s fraud and negligent 
5 misrepresentation claims; and (4) granting Kent’s summary judgment motion on Ward’s fraudulent concealment claim. ¶ 11 Because we are reviewing the trial court’s grant of summary judgment, we review each contention de novo, applying the same standard as that court. Poudre Sch. Dist. R-1 v. Stanczyk, 2021 CO 57, ¶ 12. A court may grant a motion for summary judgment when the pleadings and supporting documents establish that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. See C.R.C.P. 56(c); Gibbons v. Ludlow, 2013 CO 49, ¶ 11. The moving party has the initial burden of demonstrating the absence of a genuine issue of material fact. See AviComm, Inc. v. Colo. Pub. Utils. Comm’n, 955 P.2d 1023, 1029 (Colo. 1998); Wallman v. Kelley, 976 P.2d 330, 332 (Colo. App. 1998). If this burden is met, then the burden shifts to the nonmoving party to adequately demonstrate by relevant and specific facts that a real controversy exists. See City of Aurora v. ACJ P’ship, 209 P.3d 1076, 1082 (Colo. 2009); Churchey v. Adolph Coors Co., 759 P.2d 1336, 1340 (Colo. 1988). ¶ 12 We address each contention below. 
6 A. Covenant of Seisin ¶ 13 Ward first contends that Kent breached the covenant of seisin because he didn’t actually own the Section 1 mineral rights that he purported to sell. The covenant of seisin is a promise by the seller that he owns the property and has the rights of ownership. Bernklau v. Stevens, 150 Colo. 187, 194, 371 P.2d 765, 769 (1962). “The generally accepted rule is that a covenant of seisin is broken, if at all, when it is made.” Id. ¶ 14 Ward argues that by conveying the mineral deed to Wolf Resources for the Section 1 mineral rights, Kent promised that he owned those mineral rights, and therefore the covenant of seisin was breached at the time of the purported conveyance because he didn’t actually own the mineral rights he was selling. ¶ 15 While we agree that the breach of the covenant of seisin was adequately alleged, we conclude that the purchase agreement and mineral deed expressly bar this claim. We reach this conclusion in two different ways. ¶ 16 First, the purchase agreement provides that Wolf Resources took title without any warranty, specifically: “Wolf acknowledges that it is taking title without any warranty whatsoever, except as 
7 granted in the revised Mineral Deed which is attached hereto as Exhibit A and made a part hereof, and based only on its own investigation and not any statements made by Seller.” Second, the mineral deed contains this time limitation: “Notwithstanding the foregoing, any warranty or agreement made by Grantor [Kent] regarding title shall terminate and be of no effect on the date which is six (6) months after the date of this Mineral Deed and no claim may be made thereafter.” ¶ 17 Because Wolf Resources acknowledged that it was taking title without any warranty whatsoever and because the six-month window had closed by the time Ward filed suit, we conclude that the purchase agreement and the mineral deed expressly bar Ward’s claim arising under the covenant of seisin. Accordingly, summary judgment on this claim was properly granted. B. Unjust Enrichment ¶ 18 Ward argues that the trial court erred in granting summary judgment on its unjust enrichment claim because of material fact disputes raised by Ward. ¶ 19 A person is unjustly enriched when they benefit due to an unfair detriment to another. Salzman v. Bachrach, 996 P.2d 1263, 
8 1265 (Colo. 2000). The proper remedy upon a finding of unjust enrichment is to restore the harmed party to the position it formerly occupied either by the return of what it formerly had or by the receipt of its monetary equivalent. Lewis v. Lewis, 189 P.3d 1134, 1141 (Colo. 2008). ¶ 20 The claim of unjust enrichment is a judicial creation designed to remedy the benefit to one party that comes at the unfair detriment of another. Salzman, 996 P.2d at 1265. ¶ 21 Although a claim for unjust enrichment provides an equitable remedy and doesn’t depend on any contract, oral or written, see Lewis, 189 P.3d at 1141, a plaintiff can’t prevail on a claim of unjust enrichment where the express terms of a contract between the parties bar that claim. Printz Servs. Corp. v. Main Elec., Ltd., 949 P.2d 77, 82 (Colo. App. 1997) (if an express contract exists and an implied contract is alleged to co-exist and relate to the same subject matter, the provisions of the express contract supersede the alleged terms of the implied contract), aff’d in part and rev’d in part on other grounds, 980 P.2d 522 (Colo. 1999). ¶ 22 The time bar that defeated Ward’s covenant of seisin claim is equally fatal to the unjust enrichment claim. Specifically, the 
9 mineral deed’s language provides: “Notwithstanding the foregoing, any warranty or agreement made by Grantor [Kent] regarding title shall terminate and be of no effect on the date which is six (6) months after the date of this Mineral Deed and no claim may be made thereafter.” (Emphasis added.) This language expressly bars any claim regarding title after six months. Ward’s unjust enrichment claim is simply a repackaged title claim. Ward can’t circumvent the express terms of the mineral deed by reframing this claim as one for unjust enrichment. This is because a party cannot recover for unjust enrichment by asserting a quasi-contract when an express contract covers the same subject matter; the express contract precludes any implied-in-law contract. Printz Servs. Corp., 949 P.2d at 82; Stanford v. Ronald H. Mayer Real Est., Inc., 849 P.2d 921 (Colo. App. 1993); see also Interbank Invs., LLC v. Eagle River Water & Sanitation Dist., 77 P.3d 814, 816 (Colo. App. 2003). ¶ 23 Because the unjust enrichment claim is barred by the terms of the mineral deed, summary judgment on that claim was properly granted. C. Interpretation of the Purchase Agreement and Mineral Deed 
10 ¶ 24 Next, Ward contends that the trial court erred in its interpretation of the purchase agreement and the mineral deed. Ward’s argument focuses on the following language in the purchase agreement: Wolf warrants that, in exchange for the reduction of the Purchase Price as set forth in this paragraph, it has no other claims against Seller for the Prior Transaction or any other transaction, and in consideration of Seller reducing the Purchase Price, hereby waives and forever releases [Kent] from any claim whatsoever, whether known or unknown, including but not limited to any claims which might have arisen under the Prior Transaction. (Emphasis added.) ¶ 25 Specifically, Ward contends that “has” refers only to claims that Wolf Resources may have had at the time the purchase agreement was signed and doesn’t release Kent from liability for claims arising in the future. We disagree. ¶ 26 As stated above, the claims that Ward is asserting are all connected to the title — that is, each claim arises out of Kent not actually owning the mineral rights that he purported to convey. These claims are expressly barred by the mineral deed’s six-month time limitation on “any warranty or agreement . . . regarding title.” 
11 Even assuming that the word “has” refers only to claims that existed at the time the agreement was executed, Ward’s argument doesn’t defeat the six-month time limit in the mineral deed. D. Fraud, Negligent Misrepresentation, and Fraudulent Concealment ¶ 27 Lastly, we address Ward’s three tort claims: (1) fraud; (2) negligent misrepresentation; and (3) fraudulent concealment. These claims are different than the covenant of seisin claim and the unjust enrichment claim because they are contract formation claims. That is, if Ward’s claims of fraud, negligent misrepresentation, or fraudulent concealment succeed, they invalidate the contract and therefore would also escape the grasp of Kent’s defenses that rely on the express terms of the contract. 1. Economic Loss Rule Isn’t A Bar to Ward’s Fraud Claims ¶ 28 As a threshold matter, Kent contends that the three tort claims are barred by the economic loss rule. We disagree. ¶ 29 The economic loss rule doesn’t apply to claims arising from a defendant’s pre-contractual conduct because, at that time, there was no contract that could have subsumed identical tort duties. Hamon Contractors, Inc. v. Carter & Burgess, Inc., 229 P.3d 282, 
12 291, 293 (Colo. App. 2009); see also Van Rees v. Unleaded Software, Inc., 2016 CO 51, ¶ 15 (explaining that the economic loss rule does not bar claims “based on misrepresentations made prior to the formation of the contracts, which [the plaintiff] alleges induced him to enter into the contracts and therefore violated an independent duty in tort to refrain from such conduct”). The alleged misrepresentations and fraud by Kent that give rise to these three claims were precontractual, meaning the fraud claims aren’t barred by the economic loss rule. Therefore, we will address the merits of each claim below. 2. Fraud and Negligent Misrepresentation ¶ 30 Ward contends that the trial court erred by granting summary judgment when there were material factual disputes regarding its fraud and negligent misrepresentation claims. ¶ 31 To establish fraud, Ward has to prove that (1) Kent made a fraudulent misrepresentation of material fact; (2) at the time the representation was made, Kent knew the representation was false or was aware that he didn’t know whether the representation was true or false; (3) Ward relied on the misrepresentation; (4) Ward had the right to rely on, or was justified in relying on, the 
13 misrepresentation; and (5) the reliance resulted in damages. Barfield v. Hall Realty, Inc., 232 P.3d 286, 290 (Colo. App. 2010). ¶ 32 To prevail on its negligent misrepresentation claim, Ward must prove that (1) in the course of Kent’s business or in a transaction in which he had a pecuniary interest; (2) Kent supplied false information for the guidance of others in their business transactions; (3) Kent failed to exercise reasonable care or competence in obtaining or communicating the information; and (4) Ward justifiably and detrimentally relied on the misrepresentation. Id. ¶ 33 Ward’s fraud and negligent misrepresentation claims both fail as a matter of law on the element of justifiable reliance. If a party claiming fraud has access to information that was equally available to both parties and would have led to the discovery of the true facts, that party is not justified, as a matter of law, in relying on the alleged false representation. Vinton v. Virzi, 2012 CO 10, ¶ 17. ¶ 34 Vinton is instructive in this regard. In Vinton, the plaintiff alleged fraud after she was damaged by reliance on misrepresentations by the defendant concerning the titles to certain properties and their respective deeds. Id. at ¶ 16. Our supreme 
14 court held that because the official records regarding the properties were accessible to the general public in a publicly recorded system, the plaintiff in Vinton had no right to rely on the false representation. Id. at ¶ 17. ¶ 35 Ward argues that Vinton is not on point because several reviews of the public records didn’t reveal the truth, and therefore the access to the public records wasn’t equal. We disagree, and believe the present case is analogous to Vinton. ¶ 36 Here, as in Vinton, the documents that would have revealed the ownership status of the mineral interests were recorded and publicly available and accessible. Ward doesn’t contend otherwise. Nor does Ward contend that material information was missing from the public record. Instead, Ward contends that the title search didn’t reveal the information about the true owner of the Section 1 mineral rights. Ward’s contention is, in essence, that the public record was confusing, not that the information wasn’t in the public record or was otherwise unavailable. Although we acknowledge that the public record relating to the Section 1 mineral rights may be confusing or convoluted, the history of the various transactions can be pieced together, as evidence to determine that Kent 
15 ostensibly does not own the Section 1 mineral rights. That a real estate transaction or series of transactions may make a title history confusing isn’t enough, though, to create a genuine dispute regarding the element of reasonable reliance. This is because any reliance on Kent’s alleged representations (or silence) regarding his ownership of the mineral rights was unreasonable as a matter of law. Accordingly, Ward’s fraud and negligent misrepresentation claims fail as a matter of law. 3. Fraudulent Concealment ¶ 37 Ward’s final claim is for fraudulent concealment. The elements of fraudulent concealment are: (1) concealment of a material existing fact that in equity and good conscience should be disclosed; (2) knowledge on the part of the party against whom the claim is asserted that such a fact is being concealed; (3) ignorance of that fact on the part of the one from whom the fact is concealed; (4) the intention that the concealment be acted upon; and (5) action on the concealment resulting in damages. Kopeikin v. Merchs. Mortg. & Tr. Corp., 679 P.2d 599, 602 (Colo. 1984). ¶ 38 To prevail on a claim of fraudulent concealment, Ward must prove that Kent actually knew of a material fact that was not 
16 disclosed and that Kent’s nondisclosure was intended to cause Ward to act differently than it might otherwise have done if the information had been disclosed. Id. ¶ 39 This claim too fails as a matter of law for the reasons outlined in Vinton (though we acknowledge this is a closer call). As we understand it, Ward contends that because Kent knew about the bank foreclosure on the Section 1 property and his subsequent attempt — without permission from the bank — to transfer the Section 1 mineral rights back to himself, this, in part, was material information that Kent should have affirmatively disclosed to Wolf Resources when Wolf Resources asked if there were any issues with the property. ¶ 40 Even if Wolf Resources asked Kent whether he knew about any problems with the Section 1 property, our review of the record discloses that the information that Ward alleges Kent had a duty to disclose is information that was undisputedly available and accessible in the public record. Specifically, the deed transferring title of Section 1 to Dacono Investments was signed by Gregory Kent as President and recorded on October 3, 2008. The pledge of Section 1 as collateral for the loan between the bank and Dacono is 
17 signed, again, by Gregory Kent as President of Dacono and recorded on August 10, 2009. Kent’s attempt to sever the mineral rights from Dacono back to himself as an individual — whether with or without permission of the bank — is recorded on September 28, 2010. And then the bank’s foreclosure on, the court’s authorization for the sale of, and the subsequent purchase by the bank (and then to Carlile Capital, LLC) of Section 1 are also all recorded transactions, recorded on March 7, 2012, October 26, 2012, and March 22, 2013, respectively. Simply put, this all occurred and was recorded in the public record well in advance of the 2018 agreements between Kent and Wolf Resources. Because Ward had access to information that would’ve revealed that Kent didn’t own the Section 1 mineral rights, Ward can’t prevail on a fraudulent concealment claim based on an alleged failure to disclose that publicly available information. See Vinton, ¶ 17. ¶ 41 Because the information that forms the basis of Ward’s fraudulent concealment claim was equally available to Ward, this claim too fails as a matter of law. E. Appellate Attorney Fees 
18 ¶ 42 The purchase agreement contains the following fee-shifting provision: In the event an unsuccessful claim is brought by Wolf against [Kent] with regard to the limitations on damages as set forth herein, [Kent] shall be awarded its attorney’s fees and costs. This section shall bind any assignee of this Purchase Agreement and the Mineral Deed. Kent is the prevailing party on appeal and has a contractual right to recover reasonable attorney fees and costs. Therefore, Kent is entitled to an award of his reasonable attorney fees and costs incurred in defending this appeal. Because a trial court is better situated to resolve the factual issues associated with the entitlement to attorney fees, we exercise our discretion under C.A.R. 39.1 and remand for the trial court to determine and award Kent appellate attorney fees. See In re Marriage of Beatty, 2012 COA 71, ¶ 22. III. Conclusion ¶ 43 For the reasons set forth above, the judgment is affirmed and the case is remanded to the trial court for it to award Kent his reasonable attorney fees and costs incurred on appeal. JUDGE FOX and JUDGE JOHNSON concur.