**WYSE FINANCIAL SERVICES, INC; Irvin Borenstein, individually; Marilyn C. Green, Public Trustee, Douglas County; Realamerica Ventures, LLC; and all other persons who may claim an interest in the subject matter of this action, Petitioners,**

v.

**NATIONAL REAL ESTATE INVESTMENT, LLC., Respondent.**

No. 02SC534.

Supreme Court of Colorado, En Banc.

June 21, 2004.

Jean E. Dubofsky, P.C., Jean E. Dubofsky, Boulder, CO, Burke & Neuwirth, P.C., Dean Neuwirth, Denver, CO,. Attorneys for Petitioners.

John M. Dudgeon, Lakewood, CO, Attorney for Respondent.

Justice COATS delivered the Opinion of the Court.

Realamerica Ventures, and defendants Wyse and Borenstein, sought review of the court of appeals judgment in *National Real Estate Investment, LLC v. Wyse Financial Services, Inc.,* 66 P.3d 111 (Colo.App.2002), reversing the summary judgment of the district court. The district court quieted title to a residential property in Realamerica, the purchaser at a foreclosure sale, despite the prior recording of a redemption certificate by National Real Estate. The district court held that although National, as the assignee of a judgment creditor, tendered redemption funds to the public trustee and both received and recorded a certificate of redemption, Realamerica, on behalf of the judgment debtor, was entitled to, and did, satisfy the judgment prior to expiration of National's redemption period, thereby extinguishing National's right to redeem. The court of appeals reversed, holding it to be within the discretion of the public trustee to issue a certificate of redemption to a lienor immediately upon payment of the redemption amount, and concluding that once the public trustee issued the certificate to National, its

right to redeem could no longer be extinguished.

Because the redemption by National actually occurred upon payment of the required redemption amount to the public trustee, and at that point it became statutorily entitled to a certificate of redemption, National's right to redeem could not be extinguished by any subsequent satisfaction of the judgment. The judgment of the court of appeals is therefore affirmed.

## I.

The dispute at issue here, over the timing and significance of the issuance of a certificate of redemption, arises from the circumstances of a residential foreclosure. Because National Real Estate, LLC, had obtained a certificate of redemption, but Realamerica Ventures, LLC, had obtained both a certificate of purchase and a certificate of satisfaction of the judgment upon which National's status as a lienor was predicated, the public trustee declined to issue a deed to either party. National brought an action to quiet title in itself and for breach of the agreement assigning it the judgment, naming as defendants Realamerica and the public trustee, as well as the judgment creditor, Wyse Financial Services, Inc., and its attorney, Irvin Borenstein.

Treating the motion to dismiss jointly filed by defendants Realamerica, Wyse, and Borenstein as a motion for summary judgment, the district court granted the motion; dismissed all of National's claims for relief; and ordered the public trustee to issue a deed to Realamerica and return the redemption funds paid by National. Although the legal

significance of various actions taken by the parties was vigorously contested, the facts pertinent to the issues on review, as alleged in the pleadings and exhibits of the parties, were not in dispute.

Title to the house in question was in the name of Colette Marin, who lived there with her husband. Greenpoint Mortgage Company, which held a deed of trust on the house, began foreclosure proceedings. On March 21, 2000, Realamerica bought the house at a foreclosure sale for $394,200, the amount of the mortgage and foreclosure costs, and was issued a certificate of purchase by the public trustee that same day. Colette Marin, the owner, did not redeem within the 75 days permitted by statute.[1]

On June 5, 2000, the last day of the 75-day redemption period, Wyse assigned its $10,000 judgment against Colette Marin, which had been made a lien of record, to National,[2] and National gave notice of its intent to redeem. On June 8, after learning the payoff figures from Realamerica, National tendered payment of the statutory redemption amount to the public trustee and was delivered a certificate of redemption, which it recorded on June 12.

On June 14, after the redemption amount had already been paid and the certificate of redemption recorded, Realamerica contracted with Colette Marin, the judgment debtor, for the right to act as her agent and satisfy the judgment against her.[3] On the same day, Realamerica tendered a cashier's check to the county court in satisfaction of the judgment. The county court declined acceptance of the check, instead directing Realamerica to pay Borenstein, Wyse's lawyer of

---

1. See § 38–38–302, 10 C.R.S. (2001).

2. The parties agreed that for a consideration of ten dollars, National would purchase the judgment for the total sum of $7,500. The total balance would become due upon National redeeming and reselling the property. In the event of National's inability to redeem and resell the property, the judgment would be reassigned to Wyse. The contract specifically precluded Wyse from collecting or receiving the amount due on the judgment.

3. Colette Marin signed a notarized document designated "Agency Power and Authority", in

which she granted Realamerica the authority to satisfy the judgment on her behalf. In addition, Colette Marin, her husband, and Realamerica executed a document entitled "Agreement of Satisfaction of Judgment and Termination of Tenancy." Under this agreement, in exchange for the right to satisfy Wyse's debt, Realamerica agreed that upon receiving the trustee deed to the property, it would lease the property to the Marins free through July 2000, and would pay the Marins $20,000 when they vacated the property at the end of July. The parties agreed that the satisfaction agreement would terminate automatically if the public trustee failed to issue Realamerica the deed.

record. On June 15, the last day of the redemption period for the senior lienor,[4] Realamerica tendered the cashier's check to Borenstein, who accepted it and gave Realamerica an acknowledgement of satisfaction of judgment, with which Realamerica obtained a certificate of satisfaction from the county court and recorded it with the Douglas County Clerk and Recorder, all on the same day.

The district court found that Realamerica satisfied the judgment by tendering payment to the county court on June 14. Because it also held that a judgment lienor loses its right to redeem if its judgment is satisfied any time prior to the expiration of its redemption period, the district court granted summary judgment in favor of the defendants and ordered that a deed issue to Realamerica. On appeal, the court of appeals found it unnecessary to address the question whether Realamerica was a proper party to demand acceptance of payment in satisfaction of the judgment. Instead it reversed on the grounds that nothing prohibited the public trustee from issuing a certificate of redemption immediately upon payment of the redemption funds; and once the public trustee actually issued a certificate of redemption to National, National's right to redeem the property as a lienor could no longer be affected by satisfaction of the judgment.

## II.

The right to redeem from an execution sale is purely a creature of statute and depends entirely upon the provisions of the statute creating it. *Johnson v. Smith,* 675 P.2d 307, 310 (Colo.1984); *Walker v. Wallace,* 79 Colo. 380, 246 P. 553 (1926). Although legislation has provided judgment creditors a right of redemption in this jurisdiction, in one form or another, since before statehood, *see, e.g.,* sec. 14, 1861 Colo. Sess. Laws 264,

267, redemption following the sale of property by virtue of any foreclosure of a mortgage, deed of trust, or other lien, or by virtue of an execution and levy, at the time of the sale in this particular case, was governed by Parts 3 through 5 of Article 38 of Title 38, 10 C.R.S. (2001).[5] The applicable statutory scheme allows the owner, or any other person who would be liable for a deficiency remaining after a foreclosure sale, a period of 75 days within which to redeem the property. *See* § 38–38–302. In the event that no redemption is made during this period, the scheme then permits lienors to protect their security interests, which would be lost upon transfer of title to the purchaser, *see* § 38–38–501, by redeeming within successive, shorter periods. *See* § 38–38–303.

A lienor therefore has no right to redeem if the owner or deficiency debtor redeems within the 75–day period provided in section 38–38–302. *See* § 38–38–304(1)–(2). If, however, no redemption has been made pursuant to section 302, the lienor having the senior lien may redeem within the first ten days following expiration of the owner's redemption period. *See* § 38–38–303. Whether or not any other lienor has exercised its option to redeem, all subsequent lienors are permitted, according to the priority of their liens, successive redemption periods of five days each. *Id.*

Furthermore, in clear and unambiguous language the statute specifies precisely how a lienor wishing to redeem must do so. Within the initial 75–day redemption period, for owners and deficiency debtors, the lien in question must appear by instruments duly recorded or filed as permitted by law, and the redeeming lienor must file notice with the public trustee or sheriff, attaching a copy of these instruments and advising of his intention to redeem. *See* § 38–38–303(2).[6] If

---

4. *See* § 38–38–303, 10 C.R.S. (2001).

5. Effective July 1, 2002, the Colorado General Assembly enacted Senate Bill 02–161, significantly amending the statutory provisions governing foreclosures and redemptions. *See* Ch. 315, § 38–38–301, *et seq.,* 2002 Colo. Sess. Laws 1345–49.

6. Effective July 1, 2002, a redeeming lienor may no longer wait until the last day of owner's

redemption period but must record his lien and give notice of his intent to redeem "within the time for filing a notice of intent to redeem provided for in section 38–38–302." *See* Ch. 215, sec. 14, § 38–38–303, 2002 Sess. Laws 1345, 1346; *cf.* William T. Hudgins, *Artificial Redemption Rights: A tool of Foreclosure Investing,* 28 Colo. Law. 100 (1999) (noting various investment techniques of third party investors).

these conditions are met, redemption by the lienor is actually made or accomplished by paying to the public trustee or sheriff, within the statutory redemption period for that lienor, the redemption amount required by statute. *See* § 38–38–303(1) ("lienor ... may redeem ... by paying the public trustee or sheriff").

The statutes require no further act by the lienor in order to redeem. Payment of the redemption money in the manner prescribed by section 303 entitles the lienor to the execution and delivery of a certificate of redemption by the officer to whom the redemption money was paid. *See* § 38–38–402(1). It is clear, therefore, that according to the provisions of the statutory scheme, redemption by a lienor is in no way defined by, or made contingent upon, the execution and delivery of a certificate of redemption. Quite the opposite, the delivery of a certificate of redemption is a right to which a redeeming lienor becomes entitled upon making redemption. *Id.*

While a certificate of redemption therefore evidences payment of the redemption money by the lienor, neither the redemption itself, nor the execution and delivery of the certificate of redemption, vests title in a redeeming lienor or entitles it to a deed to the sold property.[7] The statutory scheme clearly contemplates that unless the property is earlier redeemed by the owner or deficiency debtor, redemption may be made by any number of lienors, in succession, each of which is entitled to a certificate of redemption. *See* § 38–38–402(1) & 501. While each duly recorded certificate of redemption operates as an assignment of the estate and interest acquired by the purchaser, all such assignments nevertheless remain subject to the rights of subsequent lienors entitled to redeem. *See* § 38–38–304(3). In the event that redemption is made by more than one lienor, title to the property vests in the holder of the certificate of redemption issued to the lienor last redeeming, and in the last redeeming lienor alone. *See* § 38–38–501.

Unless redemption is made by the owner or deficiency debtor, title to the sold property can therefore vest only upon expiration of all of the statutory redemption periods. *See* § 501. The failure of title to vest until all lienors have had an opportunity to redeem, however, does not render the already completed redemptions of the more senior lienors any less valid or final. In the ordered lienor redemption scheme of the Colorado statutes, a number of lienor redemptions can be made with regard to the same property, and it is the sequence of the redemptions that determines the lienor in which title to the property will ultimately vest.[8]

■ In the clear language of the statute, a lienor is entitled to redeem property purchased at a foreclosure sale if neither the owner nor a deficiency debtor has redeemed before the expiration of the 75–day redemption period, and before the expiration of the same period, the lienor has duly recorded its lien and properly given notice of his intent. The lienor actually makes redemption by paying the statutory redemption amount, to the proper officer and within the statutorily permitted period, and by doing so it is entitled to the rights that flow from redemption. Nothing in the statutory scheme suggests that a lienor can be divested of those rights, once payment of the redemption amount has been lawfully made to the public trustee or sheriff, in accordance with the statute.

Nor has this court ever held otherwise. In *Plute v. Schick,* 101 Colo. 159, 71 P.2d 802 (1937), relied upon by Realamerica, this court addressed the question whether a tender of payment, under the particular circumstances of that case, was sufficient to satisfy the judgment of a lienor. Its holding, however, intimated virtually nothing about the time frame within which satisfaction of judgment

---

7. Of course, the owner retains title after the annulment of the foreclosure sale, which occurs upon redemption by the owner. *See* § 38–38–304(1).

8. *See* Jonathan A. Goodman & Richard Byron Peddie, *Redemption in Purgatory: Who Can Thwart Lienholder Redemption Rights?,* Colo. Law. 139 (1998) (explaining that redemption statutes follow either the "scramble" system, in which any junior lienholder can redeem property at any time after the debtor's failure to redeem, or the "order system," which establishes time periods for each redeeming lienor, starting with the most senior lien).

could affect a lienor's right to redeem. The equities of the case clearly figured prominently in the court's holding that a judgment lienor was required to accept payment in satisfaction of its judgment, from the purchaser at a foreclosure sale, who had already acquired title through a quitclaim deed from the previous owner and who had already taken possession of and made substantial improvements to the premises. Whatever was intended in *Plute* concerning the credentials required to entitle someone to demand the acceptance of payment in satisfaction of a judgment, because the satisfaction in that case occurred before even a tender of the redemption amount by the lienor, the court neither considered nor implied anything about the effect on redemption of an attempt to satisfy a judgment after the judgment lienor had already exercised its right to redeem. And we have never held that it did.

In *Craft v. Storey*, 942 P.2d 1211 (Colo. App.1996), a different panel of the court of appeals held, for the first time in the published case law of this jurisdiction, that a lienor could lose its right to redeem after it had already paid the statutory redemption amount to the public trustee. Conflating redemption with the vesting of title, the court of appeals held that because title cannot vest in a lienor until the expiration of all statutory periods of redemption, *see* § 38–38–501, any satisfaction of the judgment upon which a lienor's redemption right is predicated, before that point in time, extinguishes the lienor's right to redeem. This court has never sanctioned such a reading, and in light of the statute's clear distinction between redemption and the vesting of title, which is specifically a right acquired by the last redeeming lienor, we overrule this holding of *Craft*.

### III.

 Because the purchase price paid by Realamerica equaled the amount of the mortgage being foreclosed plus all foreclosure costs, there was no deficiency for which anyone could remain liable; and Colette Marin, the owner, did not redeem within the statutory period. As Wyse's assignee, National occupied the position of lienor with the most senior lien when it gave notice of its intent to redeem on June 5, 2000, and subsequently, on June 8, when it actually paid the statutory redemption amount to the public trustee. In the absence of any satisfaction of its judgment by at least the point at which it paid the public trustee, National was entitled to, and did, make redemption as permitted by statute. Its statutory rights to the execution and delivery of a certificate of redemption, and ultimately (in the absence of any later redeeming lienor and after payment of all statutory fees) to a deed confirming transfer of title to the property, were necessarily unaffected by Realamerica's later attempts to satisfy the judgment, however successful.

### IV.

Because National Real Estate, LLC, was the assignee of a duly recorded judgment, which had not been satisfied at the time National complied with the statutory requirements for redemption by a lienor, and because National is the holder of the certificate of redemption of the last redeeming lienor, it is entitled, upon the payment of all statutory fees, to a deed confirming transfer of title to the property. Although on slightly different grounds, the judgment of the court of appeals is therefore affirmed.