**FERGUSON ENTERPRISES, INC., Plaintiff–Appellee,**

v.

**KEYBUILD SOLUTIONS, INC., f/k/a Rocky Mountain Truss, Inc.; Carpenters Service, Inc.; Autumn Landscaping, Inc.; Premier Glass Solutions, Inc.; SC Design, Inc.; Systems Plumbing, LLC; and Colorado Counter–Tops, Inc., Defendants–Appellees,**

**and**

**Colorado Community Bank, Defendant–Appellant.**

**No. 10CA2234.**

Colorado Court of Appeals, Div. II.

Dec. 22, 2011.

---

* Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. I, § 5(3), and

§ 24–51–1105, C.R.S.2011.

Andersohn Law Office, P.C., Nathan L. Andersohn, Broomfield, Colorado, for Plaintiff–Appellee.

Lathrop & Gage, LLP, Michael J. Roche, James E. Dallner, Denver, Colorado, for Defendant–Appellee Keybuild Solutions, Inc.

Arnold & Arnold, LLP, Jean C. Arnold, Kelly G. Shirk, Littleton, Colorado, for Defendant–Appellee Carpenters Service, Inc.

Polsinelli Shughart, P.C., Howard B. Gelt, Gretchen E. Lipman, Denver, Colorado, for Defendant–Appellee Autumn Landscaping, Inc.

Miller & Law, P.C., Robert H. Miller, Jeffery C. Culbertson, Littleton, Colorado, for Defendant–Appellee Premier Glass Solutions, Inc.

Jackson Law Offices, P.C., Jeffrey Q. Jackson, Littleton, Colorado, for Defendant–Appellee SC Design, Inc.

Beck, Jonson & Nolan, P.C., Thomas A. Nolan, Lakewood, Colorado, for Defendant–Appellee Systems Plumbing, LLC.

Brown Berardini & Dunning, P.C., Brian J. Berardini, Denver, Colorado, for Defendant–Appellee Colorado Counter–Tops, Inc.

Bloom, Murr & Accomazzo, P.C., Joseph A. Murr, Daniel R. Delaney, Jessica M. Debroisse, Denver, Colorado, for Defendant–Appellant.

Opinion by Judge CASEBOLT.

In this mechanics' lien foreclosure action involving the priority of liens relative to a deed of trust, defendant Colorado Community Bank (CCB) appeals the summary judgment in favor of the following lien claimants: plaintiff, Ferguson Enterprises, Inc., and defendants Keybuild Solutions, Inc., Carpenters Service Inc., Autumn Landscaping, Inc., Premier Glass Solutions, Inc., SC Design, Inc., Systems Plumbing, LLC, and Colo Counter–Tops, Inc. (collectively, lien claimants). We reverse and remand.

## I.  Facts

The following facts, reflected in the chart attached to this opinion, are undisputed.

On August 22, 2002, Zion Development, LLC, became the owner of the real property involved in this action. It commenced the planning of a multi-unit project and, in 2005, borrowed money from FlatIron Bank. That loan was secured by a deed of trust, recorded on November 22, 2005.

Zion hired PWN Architects and Planners, Inc. (the architects), who created a master plan for the project and filed the plan with the City of Thornton on October 23, 2007. The record does not reflect whether there was any construction on or improvement to the property while Zion owned it.

Zion defaulted on the FlatIron loan, precipitating a foreclosure action. At a foreclosure sale in October 2007, FlatIron was the successful bidder and received a certificate of purchase. In January 2008, FlatIron received a public trustee's deed to the property and promptly recorded it. FlatIron did not commission any work on the property during its ownership.

On May 30, 2008, FlatIron conveyed the property to Water Tower Builders, LLC (Water Tower), which financed the purchase of the property and its later construction activities through two loans in excess of $3 million obtained from CCB. The two loans were secured by a single deed of trust recorded on June 5, 2008.

Water Tower initiated its first work on the project on July 1, 2008, when it hired a project manager. The lien claimants provided work and materials to the Water Tower property between November 14, 2008, and May 22, 2009.

Water Tower was also unable to pay its obligations, prompting the lien claimants to timely file lien claims against the property for work and materials they had provided. In October 2009, Ferguson filed this mechanics' lien foreclosure action, naming CCB and the other lien claimants as defendants. The aggregate amount of the mechanics' liens filed totaled $164,049.91.

CCB initiated a foreclosure proceeding on its deed of trust in December 2009 and gave proper notice to the lien claimants. As the only bidder at a foreclosure sale on April 14, 2010, it received a certificate of purchase. None of the lien claimants sought to redeem the property. Ultimately, CCB received and recorded a public trustee's deed to the property on May 10, 2010.

CCB moved for summary judgment in this case seeking to dismiss the mechanics' lien claims, contending, as pertinent here, that the lien of its deed of trust was prior and superior to the mechanics' liens involved here because CCB was a construction lender entitled to priority under *Joralman v. McPhee*, 31 Colo. 26, 37, 71 P. 419, 422 (1903), and *1st Choice Bank v. Fisher Mechanical Contractors, Inc.*, 15 P.3d 1100 (Colo.App.2000). Alternatively, CCB asserted that under section 38–38–501, C.R.S.2011, the deed issued by the public trustee following foreclosure specifically extinguished any junior liens.

Ferguson filed a cross-motion for summary judgment, which the other lien claimants joined, asserting that its mechanics' lien had priority over CCB's deed of trust because it was entitled to relate its lien back to October 23, 2007, a date when work performed by the architects for Zion was filed as a master plan.

The trial court denied CCB's motion and granted the cross-motion in favor of the lien claimants. The court concluded that the mechanics' liens related back to the date of the first work performed for Zion, based on the filing of the master plan on October 23, 2007 by the architects, thereby predating CCB's deed of trust and rendering CCB's interest junior to the mechanics' liens. This appeal followed.

CCB contends that the trial court erred in determining that the mechanics' liens involved here had a priority senior to its deed of trust. We agree in part and, because the record does not provide facts that are necessary for such a determination, we remand for further proceedings.

## II. Standard of Review

Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits filed by parties, demonstrate that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *See* C.R.C.P. 56(c). We review de novo an order granting summary judgment. *McIntyre v. Bd. of County Comm'rs*, 86 P.3d 402, 406 (Colo. 2004).

We also review a trial court's application of the law de novo. *Asphalt Specialties, Co. v. City of Commerce City*, 218 P.3d 741, 745 (Colo.App.2009) (statutory interpretation is a question of law subject to de novo review).

▮ The mechanics' lien statute should be strictly construed with respect to those acts necessary to perfect the lien and should be construed liberally as to the provisions of the statute that are remedial in nature. *Powder Mountain Painting v. Peregrine Joint Venture*, 899 P.2d 279, 281 (Colo.App. 1994). Lien priority relates to the perfection

of the lien and not the remedial portions of the statute. Accordingly, the statute's provisions governing priority must be strictly construed. *Id.*

## III. Construction Loan and Mechanics' Lien Law

▮ Mechanics' liens are generally subordinate to a prior recorded deed of trust on the land. *See Darien v. Hudson*, 134 Colo. 213, 215–16, 302 P.2d 519, 521 (1956); *1st Choice Bank*, 15 P.3d at 1102. However, regarding liens on improvements, section 38–22–103(2), C.R.S.2011, provides in pertinent part:

When the lien is for work done or labor or materials furnished for any entire structure, erection, or improvement, such lien shall attach to such building, erection, or improvement for or upon which the work was done ... in preference to any prior lien or encumbrance, or mortgage upon the land upon which the same is erected or put....

▮ In *Lew Hammer, Inc. v. Dash, Inc.*, 42 Colo.App. 414, 416–17, 599 P.2d 948, 949–50 (1979), a division of this court addressed this statutory provision, and held that it applies to the construction of new improvements as distinguished from expansion, repair, and remodeling of existing improvements. Because the division concluded that the landscaping contractor involved there did not provide new improvements, the division held that the statute was not applicable. However, we conclude from the opinion that, when section 38–22–103(2) is applicable, it provides for a superior lien on the improvement itself (as opposed to the real estate). *See Powder Mountain Painting*, 899 P.2d at 281; *see also* Jack Greenwald, *Colorado Liens and Claims Handbook* § 2.3.3 (2010).

Here, CCB appears to concede that lien claimants' work was performed on new improvements. Accordingly, section 38–22–103(2) is applicable and, absent more, would provide a superior lien on the improvements to the lien claimants.

▮ However, even when section 38–22–103(2) is applicable to grant priority to me-

chanics' liens on newly constructed improvements, an exception to this rule grants the lien of a prior deed of trust priority in the improvements insofar as the purpose of the loan was to build the structure and improvements and the proceeds were actually used for that purpose. *Joralman*, 31 Colo. at 37, 71 P. at 422; *1st Choice Bank*, 15 P.3d at 1102–03. Thus, "mechanics' liens are not entitled to priority under [section] 38–22–103(2) over a pre-existing deed of trust expressly intended to secure a loan for construction if (1) the deed is recorded prior to attachment of the mechanics' liens and (2) the loan proceeds are used for construction purposes." *1st Choice*, 15 P.3d at 1102–03. The rationale for this exception is that, when mechanics' lienors know or should know they are being paid from the proceeds of a construction loan secured by a recorded deed of trust, they are provided sufficient protection in that a search of the title records can reveal prior liens securing a construction loan, and the subcontractor can then determine if it is appropriate to work on the project under those circumstances. *See id.* at 1104.

■ Here, CCB's recorded deed of trust states that "this Security Instrument secures an obligation incurred for the construction of an improvement on the Project." Accordingly, the deed of trust is expressly intended to secure a loan for construction. The record also shows that the deed of trust secured two loans, one for construction of improvements and one to complete the actual purchase of the property by Water Tower. One promissory note in the amount of $1,839,000 indicates that the purpose of the loan is to "construct 13 townhomes in Thornton, Colorado," while another promissory note in the amount $1,225,000 indicates its purpose is to "purchase 52 developed townhome lots." Two affidavits submitted by CCB to the trial court with its motion for summary judgment and its reply reflect that CCB agreed to advance up to $1.8 million for construction, and actually advanced "at least $1.6 million."

Accordingly, the lien claimants are charged with notice of the CCB deed of trust lien from the time the deed of trust was recorded, *see 1st Choice*, 15 P.3d at 1103, and thus, CCB's pre-existing deed of trust is entitled to priority not only upon the land, but also upon the improvements insofar as its proceeds, $1.6 million, were actually applied in making the improvements. *See id.* at 1103–04.

We reject lien claimants' argument that the two affidavits CCB submitted are contradictory, thus creating a genuine issue of material fact. The Bowlds affidavit states, "[Water Tower] received a loan from CCB on May 29, 2008 for the purpose of developing and constructing improvements on the Property. CCB advanced approximately $1.8 million solely to fund construction of the improvements." The Hay affidavit, signed one month after the Bowlds affidavit, recites the amounts the lien claimants actually received from the construction loan funds and summarizes, "all told, [Hay's] calculations indicate that at least $1.6 million was paid directly by CCB to various contractors and subcontractors for work related to the construction of the premises." The Bowlds affidavit qualifies its statement of the amount as "approximate," while the Hay affidavit avers that $1.6 million was actually paid. Moreover, there is no contrary affidavit to dispute that CCB actually applied "at least $1.6 million" to the project, or that takes issue with the statement that lien claimants received the stated proceeds from CCB's construction loan.

■ We also reject lien claimants' contention that the affidavits are insufficient because they do not contain an accounting of exactly where all construction loan funds were employed. The affidavits are sufficient to establish the fact of payment, and any lack of accounting does not diminish their prima facie evidentiary value.

Accordingly, it is undisputed that CCB has met the construction loan requirements identified in *Joralman* and *1st Choice*, inasmuch as its deed of trust was recorded on June 5, 2008, before any work commissioned by Water Tower began on the property. Further, the deed of trust states that it secures a loan for construction, and CCB disbursed loan proceeds of $1.6 million for construction purposes. *See 1st Choice*, 15 P.3d at 1103; D. Wells, T. Scoby & L. Labe, *Mechanics' Liens, Construction Bonds and Remedies for Nonpayment Under Colorado Law* II–45

(1990) (if construction loan deed of trust correctly recites its purpose as a construction loan and is recorded before the commencement of work, the deed of trust will be prior on both the land and improvements unless the money advanced is not actually used for construction purposes).

However, this conclusion is subject to a determination whether the mechanics' liens relate back to the architects' services for Zion, which would provide them priority over the CCB deed of trust regardless of the construction loan doctrine. We now turn to that issue.

## IV.   Relation Back of Mechanics' Liens

■   Lien claimants contend that their liens "attached" as of October 23, 2007, because their work relates back to work performed by the architects for the previous owner, Zion. This contention requires examination of the relation back doctrine applicable in certain situations. We conclude that further proceedings are necessary to resolve this contention.

Section 38–22–106(1), C.R.S.2011, which provides for priority of mechanics' liens and their attachment, states:

All liens established by virtue of this article shall relate back to the time of the commencement of work under the contract between the owner and the first contractor, or, if said contract is not in writing, then such liens shall relate back to and take effect as of the time of the commencement of the work upon the structure or improvement, and shall have priority over any lien or encumbrance subsequently intervening, or which may have been created prior thereto but which was not then recorded and of which the lienor, under this article, did not have actual notice. Nothing contained in this section, however, shall be construed as impairing any valid encumbrance upon any such land duly made and recorded prior to the signing of such contract or the commencement of work upon such improvements or structure.

■   This statute embodies a relation back doctrine, which essentially provides that a mechanics' lien relates back in time and has

priority from the date work first commences on the project at issue, thus gaining a preference over other liens and interests in the land that may have been recorded before the actual filing of the lien. *See Trustees of Mortg. Trust v. Dist. Court,* 621 P.2d 310, 312 (Colo.1980).

The rendition of services by an architectural firm in preparing preliminary plans and drawings for a project has been held to constitute the commencement of work under this statute. *See Bankers Trust Co. v. El Paso Pre–Cast Co.,* 192 Colo. 468, 473, 560 P.2d 457, 460–61 (1977); *James H. Stewart & Assocs., Inc. v. Naredel of Colo., Inc.,* 39 Colo.App. 552, 554, 571 P.2d 738, 740 (1977); *see also* § 38–22–101, C.R.S.2011 (granting lien to architects and engineers).

At first blush, lien claimants' argument appears to have merit. As previously noted, a mechanics' lien generally relates back in time and has priority from the date work first commences "on the project at issue," *see Trustees of Mortg. Trust,* 621 P.2d at 312, and here, it is undisputed that the project commenced by Zion was the same as the one pursued by Water Tower.

CCB argues, however, that the statutory language that mechanics liens "shall relate back to the time of the commencement of work under the contract between the owner and the first contractor" does not define the term "owner" in this context. CCB argues that the term "owner" must be read to mean "current owner," noting, correctly, that only work done at the instance of the owner of the property can support a lien, *see C & W Electric, Inc. v. Casa Dorado Corp.,* 34 Colo. App. 117, 120, 523 P.2d 137, 139 (1974), and here, the work to which these lien claimants seek to relate back was not performed for owner Water Tower but, instead, was performed for Zion, a previous owner. *See Printz Servs. Corp. v. Main Elec., Ltd.,* 949 P.2d 77, 80 (Colo.App.1997) (a mechanics' lienor cannot claim a priority based upon work commissioned by someone other than the property owner or the owner's agent), *aff'd in part and rev'd in part on other grounds,* 980 P.2d 522, 523 (Colo.1999).

■   In construing a statute, our primary duty is to give effect to the intent of the

General Assembly and adopt the statutory construction that best effectuates the purposes of the legislative scheme, looking first to the plain language of the statute. *Spahmer v. Gullette*, 113 P.3d 158, 162 (Colo.2005).

To effectuate the legislative intent, a statute must be read and considered as a whole and should be interpreted in a manner that will give consistent, harmonious, and sensible effect to all its parts. *State v. Nieto*, 993 P.2d 493, 501 (Colo.2000). There is a presumption that the General Assembly intends a just and reasonable result when it enacts a statute, and a statutory construction that defeats the legislative intent will not be followed. § 2–4–201(1)(c), C.R.S.2011; *see Frohlick Crane Serv., Inc. v. Mack*, 182 Colo. 34, 37–38, 510 P.2d 891, 892 (1973). If the plain language of the statute is clear and unambiguous, we apply the statute as written, unless it leads to an absurd result. *E–470 Pub. Highway Auth. v. Kortum Inv. Co.*, 121 P.3d 331, 333 (Colo.App.2005).

"We read words and phrases in context and construe them literally according to common usage unless they have acquired a technical meaning by legislative definition." *People v. Yascavage*, 101 P.3d 1090, 1093 (Colo.2004).

Here, CCB's interpretation would mean that mechanics' liens can *never* relate back to work done for prior owners. Were that proposition correct, landowners could avoid mechanics' liens simply by transferring the property during construction to some related third party such as a spouse or entity controlled or owned by the landowner, and contend that work the original landowner commissioned from contractors thereafter is not lienable because it was not done at the behest of the "current owner." And even purchasers for value could assert that they would take title free of any liens, even though having actual knowledge of work performed for or construction liens recorded against a property. Such constructions of the statute would be absurd, a result we must avoid. *See Reg'l Transp. Dist. v. Lopez*, 916 P.2d 1187, 1192 (Colo.1996) (statute should not be interpreted so as to produce an absurd result). Moreover, CCB's "current owner" interpretation would require us to add words to the statute, which we cannot do. *See Turbyne v. People*, 151 P.3d 563, 567 (Colo.2007) ("We do not add words to the statute or subtract words from it."). Accordingly, we reject CCB's interpretation.

Even so, lien claimants' position that their work relates back to work performed by the architects for the previous owner ignores the fact that an intervening foreclosure by FlatIron against Zion, the previous owner, has taken place. In such a foreclosure, under section 38–38–501, a certificate of purchase holder generally takes title to the property in question free and clear of all liens and encumbrances junior to the lien foreclosed. *See First Interstate Bank v. Tanktech, Inc.*, 864 P.2d 116, 119 (Colo.1993) (plain intent of this provision is to extinguish all subordinate liens upon foreclosure; purpose of the statute is to allow a transferee to rely on the state of record title). Stated differently, when a deed of trust is foreclosed, the issuance of a certificate of purchase voids all junior liens, unless a redemption occurs, *see WYSE Financial Servs., Inc. v. National Real Estate Investment, LLC*, 92 P.3d 918, 921 (Colo.2004), and the title received is free and clear of all unredeemed junior encumbrances. *See Land Title Ins. Corp. v. Ameriquest Mortg. Co.*, 207 P.3d 141, 146 (Colo.2009) (a lien junior to the lien foreclosed is extinguished by expiration of the redemption period); *Green Tree Servicing, LLC v. U.S. Bank*, 192 P.3d 1014, 1019 (Colo.App.2007) (when redemption period expires and public trustee deed issues, all junior liens are extinguished as a matter of law).

In *Ragsdale Bros. Roofing, Inc. v. United Bank*, 744 P.2d 750 (Colo.App.1987), a division of this court construed section 38–38–501 in the context of a dispute between mechanics' lien claimants and a deed of trust holder. There, the owner of vacant land had granted a first deed of trust to First National Bank. The owner then borrowed funds from United Bank and secured the obligation with a second deed of trust, following which several contractors performed work on a new structure on that property. When the con-

tractors failed to receive payment, they filed mechanics' liens.

The owner defaulted on the promissory note to United Bank, prompting a foreclosure proceeding on the second deed of trust. United Bank purchased the property at the public trustee's sale, received a certificate of purchase, and later received and recorded a deed to the property.

The contractors filed an action to foreclose their liens, naming United Bank as a defendant. The trial court held that what is now section 38–38–501 did not cut off the contractors' liens on the building, but did cut off the liens on the land. *Id.* at 752.

Affirming on appeal, a division of this court noted that, under section 38–22–103(2), when a mechanics' lien is for work done or material furnished for any entire structure, the lien attaches to the structure in preference to any prior lien or mortgage on the land. Noting United Bank had conceded that its deed of trust was junior to the contractors' liens as to the structure under section 38–22–103(2), the division then had to reconcile that provision with section 38–38–501. The division concluded that "[w]hen a lien is filed later in time than a deed of trust, yet is superior to the deed of trust, the title acquired pursuant to the public trustee's sale and deed is subject to the superior lien," and that the trial court did not err in ruling that United Bank's title pursuant to the public trustee's certificate of purchase and deed was subject to the contractors' superior mechanics' liens on the building. *Id.* at 753.

Applying the above principles here, the FlatIron foreclosure, which was based upon a deed of trust recorded on November 22, 2005, would have extinguished all liens junior to its deed of trust as to the real estate. *See id.* The architects' work involved the creation of a master plan for the project, which was filed and approved on October 23, 2007, the date upon which the lien claimants here rely for attachment for their liens. Clearly, FlatIron's deed of trust lien on the real estate, recorded in 2005, was senior to any lien on the real estate that the architects had or could have had in 2007. *See* § 38–22–106(1) ("Nothing contained in this section, however, shall be construed as impairing any valid encumbrance upon any such land duly made and recorded prior to the signing of such contract or the commencement of work upon such improvements or structure."); *see also Lew Hammer, Inc.,* 42 Colo.App. at 416, 599 P.2d at 949 (landscaper's work, commenced after two prior deeds of trust had been recorded, established a lien junior to the prior liens).

Whether the FlatIron foreclosure extinguished any architects' lien that arose as of October 23, 2007, would depend upon whether there was any structure or improvements to which any lien could attach under section 38–22–103(2). If so, the architects' lien would be a superior lien upon any improvements and structures under section 38–22–103(2), and FlatIron would have taken title upon receipt of the certificate of purchase and deed subject to that superior lien. *See Ragsdale Bros. Roofing,* 744 P.2d at 753. Under those circumstances, the lien claimants here could relate back their work to the date of the architects' filing of the master plan.

However, if any architects' lien were junior to FlatIron's lien on any structure or improvements, the foreclosure would have extinguished it, and the lien claimants could not relate their work back to the master plan filing. Also, in the event that the architects did not actually file a lien, the lien claimants could not relate back their work thereto, because a bona fide purchaser without notice at the FlatIron foreclosure sale would have had no record notice of any lien claim, and the foreclosure would have cut off any inchoate lien. *See generally First Interstate Bank,* 864 P.2d at 119 (the plain intent of section 38–38–501 is to extinguish all subordinate liens upon foreclosure, and its purpose is to allow a transferee to rely on the state of record title); *City of Lakewood v. Mavromatis,* 817 P.2d 90, 94 (Colo.1991) (recording acts protect subsequent purchasers of real property against the risk of prior secret and unknown instruments and generally permit a purchaser to rely on the condition of title as it appears of record); *Ragsdale Bros. Roofing,* 744 P.2d at 753.

Hence, it must be determined whether the architects asserted a mechanics' lien that was superior to the FlatIron deed of trust as to any improvements. However, whether the architects had a senior lien on any improvements or structure is not answered or addressed by the undisputed facts here. Because the record does not provide the facts necessary to determine this issue for summary judgment purposes, we must remand for additional proceedings. We also note that any architects' lien must have been preserved and pursued by appropriate compliance with time limitations for filing the lien and commencement of foreclosure proceedings. *See* § 38–22–110, C.R.S.2011 (action must be commenced within six months).

### V. Additional Contentions

■ CCB contends that the lien claimants cannot relate their liens back to work done by the architects for Zion because, under section 38–22–122, C.R.S.2011, the work was not completed under the same contract between the same parties. However, as lien claimants point out, CCB did not assert this argument in the trial court. Accordingly, we decline to address it here. *See Brown v. Silvern*, 141 P.3d 871, 874 (Colo.App.2005) (arguments never presented to, considered by, or ruled upon by a trial court may not be raised for the first time on appeal).

CCB also contends that, under section 38–38–501, the mechanics' liens at issue here were extinguished by its own foreclosure of the deed of trust granted by Water Tower. However, under *Ragsdale Bros. Roofing*, 744 P.2d at 753, if the liens of the claimants here are in fact senior to the CCB deed of trust as to any improvements or structure (because they are permitted to relate back to the architects' work for the prior owner), CCB would take title subject to those liens, given that it had actual and record notice of them before purchasing at the foreclosure sale.

Accordingly, because the record does not contain sufficient facts for a legal determination of lien seniority to be made, resolution of this issue will also depend on facts that must be developed on remand.

The judgment is reversed and the case is remanded with directions to allow the filing of further affidavits sufficient to respond to the factual issues noted in this opinion, or, if genuine issues of material fact preclude summary judgment, for further discovery and trial.

Judge LICHTENSTEIN and Judge MILLER concur.