COLORADO COURT OF APPEALS                                    2016COA111

Court of Appeals No. 15CA1046
Adams County District Court No. 14CV31889
Honorable Mark D. Warner, Judge

Mortgage Investments Enterprises LLC,

Plaintiff-Appellant,

v.

Oakwood Holdings, LLC,

Defendant-Appellee.

JUDGMENT REVERSED AND CASE
REMANDED WITH DIRECTIONS

Division III
Opinion by JUDGE BOORAS
Graham and Richman, JJ., concur

Announced July 14, 2016

Murr Siler & Accomazzo, P.C., Joseph A. Murr, Maris S. Davies, Denver,
Colorado, for Plaintiff-Appellant

Sweetbaum Sands Anderson PC, Geoffrey P. Anderson, Reagan Larkin, Denver,
Colorado; Navaro & Associates LLC, Steven Navaro, Castle Rock, Colorado for
Defendant-Appellee

¶ 1    Plaintiff, Mortgage Investments Enterprises LLC (Mortgage Investments), appeals the district court's order granting defendant's, Oakwood Holdings, LLC (Oakwood), motion for summary judgment. We reverse the district court's judgment and remand the case with directions.

## I.    Background

¶ 2    This case involves a dispute regarding the foreclosure and redemption processes in Colorado. Thus, to better understand the facts of this case, it is helpful to first provide a brief overview of the foreclosure and redemption procedures.

### A.    Foreclosure and Redemption

¶ 3    The foreclosure process protects a creditor's right to repayment of debts, including homeowners' association liens and monetary judgments. Specifically, section 38-38-101, C.R.S. 2015, enables a creditor to obtain a judgment and decree of foreclosure against a debtor and have the subject property auctioned at a foreclosure sale. The creditor can then use the proceeds of the sale to satisfy the unpaid debts.

¶ 4    Foreclosure is not without consequences, however, particularly for creditors whose liens are subordinate to — i.e.,

1

junior to — a lien being foreclosed (junior lienors). Indeed, where multiple liens are filed against the foreclosed property, foreclosure of a senior lien generally extinguishes all junior liens. § 38-38-501, C.R.S. 2015; *see also Ferguson Enters., Inc. v. Keybuild Sols., Inc.*, 275 P.3d 741, 745 (Colo. App. 2011).

¶ 5 Accordingly, to protect creditors' entitlement to payment, the General Assembly has provided them with the right to redeem foreclosed property on which they have a junior lien. *See* § 38-38-302, C.R.S. 2015. This right to redeem refers to a process by which title to the previously foreclosed property vests with the redeeming junior lienor, rather than with the purchaser at the foreclosure sale (the certificate of purchase holder), if (1) the junior lienor follows the required statutory procedures, including filing a notice of intent to redeem; (2) the junior lienor pays, within its statutory period for redemption, the required redemption amount; and (3) no other, more junior lienors exercise their subsequent right of redemption. *See id.*; *see also WYSE Fin. Servs., Inc. v. Nat'l Real Estate Inv., LLC*, 92 P.3d 918, 921-22 (Colo. 2004).

¶ 6 With respect to the timing for redemption, the "junior lienor having the most senior recorded lien" has the first opportunity to

redeem, which begins "[n]o sooner than fifteen business days" and ends "nineteen business days" after the foreclosure sale. § 38-38-302(4)(a). Each subsequent junior lienor then has five business days to redeem from the previous lienor's redemption. § 38-38-302(4)(b)(I).

¶ 7 Prior to 2008, owners of foreclosed property also had the right to redeem from a foreclosure sale. Ch. 275, sec. 2, § 38-38-302, 1990 Colo. Sess. Laws 1664-65. Effective in 2008, however, the General Assembly eliminated that right. *See* Ch. 305, sec. 21, § 38-38-302, 2006 Colo. Sess. Laws 1467. Under the current scheme, only junior lienors have the right to redeem. *See* § 38-38-302.

### B. The Facts

¶ 8 Turning, now, to the facts of this case, the debtors purchased a home in Adams County (the property) in 2006. That same year, they defaulted on their obligation to pay monthly fees to the Kimblewyck Village Owners Association (Kimblewyck). Kimblewyck filed a lien against the property in December 2006.

¶ 9 In addition to the Kimblewyck lien, the property was also encumbered by (1) a lien filed by the Fox Run Owners Association

and (2) two judgments entered in favor of Community Management Association, Inc. (CMA).

¶ 10     In May 2014, Kimblewyck obtained a judgment and decree of foreclosure, and the property was auctioned at a sheriff's sale on September 25, 2014.  Mortgage Investments was the successful bidder at the foreclosure sale, so the Adams County Sheriff issued Mortgage Investments a certificate of purchase.

¶ 11     On the day before the foreclosure sale, Oakwood purchased the Fox Run lien and the two CMA judgments.[1]

¶ 12     And, on the day after the foreclosure sale, Mortgage Investments obtained a valid power of attorney from the debtor, which authorized Mortgage Investments to pay the Fox Run lien and the CMA judgments.

¶ 13     On October 1, 2014, within eight business days after the sale, pursuant to section 38-38-302(1)(d), Oakwood filed a notice of intent to redeem the Fox Run lien so that it could acquire title to the property.  On October 7, 2014, Mortgage Investments tendered, on behalf of the debtor, pursuant to the power of attorney, payment

---

[1] The parties dispute the exact timing of Oakwood's purchase. However, this factual dispute has no effect on our resolution of the case.

to Oakwood in satisfaction of the Fox Run lien. Although Oakwood's period to redeem had not yet begun, it refused to accept payment.

¶ 14    On October 6, 2014, Oakwood filed a notice of intent to redeem one of the CMA judgments. On October 15, 2014, before Oakwood's redemption period had commenced, Mortgage Investments again tendered payment to Oakwood in satisfaction of the judgment. And, again, Oakwood rejected the payment, despite the fact that its redemption period had not yet begun.

¶ 15    On October 15, 2014, Mortgage Investments filed a complaint seeking a declaratory judgment that Oakwood was required to accept Mortgage Investments' tenders on behalf of the debtor. Mortgage Investments also filed a motion for a temporary restraining order and preliminary injunction to enjoin Oakwood from redeeming.

¶ 16    The district court granted the request for a temporary restraining order and later held a hearing on Mortgage Investments' motion for a preliminary injunction. Ultimately, on November 10, 2014, the court denied Mortgage Investments' request for a

preliminary injunction. On November 20, 2014, Oakwood tendered redemption funds and received a sheriff's deed to the property.

¶ 17    The parties later filed motions for summary judgment on the issue of whether Mortgage Investments could pay off, before the redemption period began, the lien and judgments Oakwood had purchased.

¶ 18    As relevant here, Mortgage Investments contended that it tendered payment in satisfaction of the lien and judgments before Oakwood's period for redemption had begun and before Oakwood tendered redemption funds. Thus, Mortgage Investments argued that under *WYSE*, 92 P.3d at 921-22, Oakwood had not yet accomplished redemption. Relying on *Osborn Hardware Co. v. Colorado Corp.*, 32 Colo. App. 254, 258, 510 P.2d 461, 463 (1973), Mortgage Investments asserted that Oakwood therefore had a duty to "accept the tender and to assist in satisfaction of the judgment."

¶ 19    In relevant part, Oakwood's response contended that

- Mortgage Investments "knew that sufficient funds were already being held by the Court Registry to satisfy the liens held by Oakwood as a result of the overbid proceeds from [the foreclosure] sale";

6

- *Osborn* is inapplicable because that case was decided before the General Assembly eliminated a debtor's right to post-foreclosure redemption in 2008;

- Oakwood "had already established its choate right of redemption prior to [Mortgage Investments'] tender by filing its Notice of Intent to Redeem"; and

- Oakwood was not required to accept Mortgage Investments' tender on behalf of the debtors because, under *WYSE,* a certificate of purchase holder cannot extinguish a junior lienor's right to redeem.

¶ 20    The district court granted summary judgment in favor of Oakwood, concluding that Oakwood was not required to accept Mortgage Investments' tender of payment on behalf of the debtor. Specifically, the court concluded that

- cases standing for the proposition that a debtor has a right to pay judgments and to prevent redemption were inapplicable because they were decided before the General Assembly

eliminated a debtor's post-foreclosure right to redeem in 2008;[2]

- the property was sold at the foreclosure sale on September 25, 2014, and Mortgage Investments "did not seek to satisfy [Oakwood's] outstanding judgment and liens until October 14, 2014," so "to any extent [it] was acting 'in the shoes of the debtor' under power of attorney, it failed to exercise the debtor's rights within the statutory redemption period";[3]

- "the General Assembly has not taken affirmative action to give a holder of a [c]ertificate of [p]urchase the right to purchase recorded debts against the property to frustrate redemption by the holder or assignee of the debts recorded on the property"; and

---

[2] The district court did not cite or address Mortgage Investments' reliance on *Osborn Hardware Co. v. Colorado Corp.*, 32 Colo. App. 254, 258, 510 P.2d 461, 463 (1973).

[3] The "statutory redemption period" to which the trial court was referring is unclear. As the trial court acknowledged, the General Assembly eliminated property owners' post-foreclosure redemption rights effective in 2008. *See* Ch. 305, sec. 21, § 38-38-302, 2006 Colo. Sess. Laws 1467. Moreover, based on our review of the record, Mortgage Investments tendered payment in satisfaction of the liens on October 7, 2014, and October 15, 2014.

- it could find nothing in the foreclosure scheme that would give Mortgage Investments the "statutory right" to force Oakwood "to accept the tender."

## II.    Standard of Review and Summary Judgment

¶ 21    We review a district court's grant of summary judgment de novo. *Armed Forces Bank, N.A. v. Hicks*, 2014 COA 74, ¶ 20.

¶ 22    "Summary judgment is appropriate when the pleadings and supporting documents clearly demonstrate no issue of material fact exists, and the moving party is entitled to judgment as a matter of law." *Olson v. State Farm Mut. Auto. Ins. Co.*, 174 P.3d 849, 852 (Colo. App. 2007).

¶ 23    The facts in this case are undisputed. The appeal turns on the district court's legal conclusion that Oakwood had no duty to accept tender of payment in satisfaction of its liens. We review such conclusions de novo. *See Ferguson*, 275 P.3d at 745.

## III.    Discussion

¶ 24    As discussed above, the district court granted Oakwood's motion for summary judgment on the bases that (1) the General Assembly has preserved junior lienors' post-foreclosure right to redeem, while simultaneously eliminating that same right for

debtors; (2) the General Assembly has "not taken affirmative action to give a holder of a [c]ertificate of [p]urchase the right to purchase recorded debts against the property to frustrate redemption"; and (3) it could find nothing in the foreclosure statutes giving Mortgage Investments the right to force Oakwood to accept tender of payment on behalf of the debtor. Mortgage Investments contends that the district court erred in granting summary judgment on those grounds. We agree.

¶ 25    The district court's, and Oakwood's, reliance on the elimination of a debtor's post-foreclosure redemption right is misplaced. In this case, Mortgage Investments did not attempt to make a post-foreclosure redemption. Rather, it was attempting to pay, on behalf of the debtor, outstanding liens encumbering the property it had purchased at the foreclosure sale.

¶ 26    Nevertheless, we agree that had Oakwood accepted (or been required to accept) Mortgage Investments' tender of payment, the effect would have been to prevent a redemption by Oakwood. The question, then, is whether, prior to the start of Oakwood's period to redeem and before it tendered redemption funds, Oakwood had a

duty to accept Mortgage Investments' tender of payment, on behalf of the debtor, in satisfaction of the lien Oakwood sought to redeem.

¶ 27    The statute provides that the period for redemption begins "[n]o sooner than fifteen business days" after the foreclosure sale, but it does not address the rights of debtors, certificate of purchase holders, or junior lienors during this period.  § 38-38-302(4).  Indeed, the statute does not explicitly give a certificate of purchase holder the right to pay, on behalf of the debtor, liens encumbering foreclosed property.  Nor does it explicitly give a junior lienor the right to refuse a tender of payment in satisfaction of a lien prior to the start of the junior lienor's redemption period and before the junior lienor tenders redemption funds.

¶ 28    Thus, because the statute is silent as to the issue raised in this appeal, we interpret it to give effect to the General Assembly's objectives.  *Buckley v. Chilcutt*, 968 P.2d 112, 117 (Colo. 1998).  But in doing so, we do not write on a clean slate: the supreme court and divisions of this court have previously considered the competing rights of debtors and junior lienors under earlier versions of the redemption statute.

¶ 29    We begin by noting that "[t]he redemption laws were enacted with the beneficent view of helping creditors to recover their just demands, nothing more." *Plute v. Schick*, 101 Colo. 159, 161-62, 71 P.2d 802, 804 (1937); *Osborn*, 32 Colo. App. at 258, 510 P.2d at 463 (same). And, because the right is "purely a creature of statute and depends entirely upon the provisions of the statute creating it," *WYSE*, 92 P.3d at 921, the right to redeem must be "exercised in strict compliance with" the redemption statute's terms, *Sant v. Stephens*, 753 P.2d 752, 756 (Colo. 1988).

¶ 30    Furthermore, the right to redeem is not absolute; it must be balanced against a debtor's right to pay a judgment. In *Plute*, the supreme court held that a debtor has "a legal right to pay [a] judgment, and thereby prevent a redemption by [a] defendant." 101 Colo. at 162, 71 P.2d at 804. Ordinarily, once the debtor tenders payment, "[t]he creditor's duty is to accept the tender and to assist in satisfaction of the judgment." *Osborn*, 32 Colo. App. at 258, 510 P.2d at 463-64; *see also Davis Mfg. & Supply Co. v. Coonskin Props., Inc.*, 646 P.2d 940, 944 (Colo. App. 1982) ("There is no dispute in

the instant case about the right of the debtor to pay its own debts and to obtain a satisfaction thereof.").[4]

¶ 31     This is not to say that a debtor has an absolute right to prevent redemption, either. In *WYSE*, the supreme court narrowed, but did not overrule, *Plute*, holding that once redemption is accomplished, the right to redeem cannot "be extinguished by any subsequent satisfaction of the judgment." 92 P.3d at 920.

¶ 32     Thus, under *Plute*, *Osborn*, and *WYSE*, debtors have a right to pay liens and monetary judgments, and to have creditors accept payment and assist in satisfaction thereof, until a junior lienor "actually makes [a] redemption." *WYSE*, 92 P.3d at 922; *see also Plute*, 101 Colo. at 161-62, 71 P.2d at 804; *Osborn*, 32 Colo. App. at 258, 510 P.2d at 463-64.

¶ 33     "[R]edemption by the lienor is actually made or accomplished by paying to the public trustee or sheriff, within the statutory

---

[4] We acknowledge that *Plute* and *Osborn* were decided before the General Assembly eliminated property owners' right to redeem after a foreclosure sale. However, in both cases, the courts followed the rule that debtors have a legal right to pay a judgment, despite the fact that the property owners' statutory periods for redemption had passed. *Plute v. Schick*, 101 Colo. 159, 160-63, 71 P.2d 802, 803-04 (1937); *Osborn*, 32 Colo. App. at 256-58, 510 P.2d at 462-64.

redemption period for th[e] lienor, the redemption amount required by statute." *WYSE*, 92 P.3d at 922.

¶ 34     Oakwood does not dispute that Mortgage Investments tendered, on behalf of the debtor, payment in satisfaction of the liens Oakwood sought to redeem *before* Oakwood's statutory period for redemption had begun and *before* Oakwood tendered redemption funds to the sheriff.

¶ 35     Accordingly, Oakwood had not yet accomplished redemption by tendering redemption funds within the statutory period, *id.*, so it had a "duty . . . to accept [Mortgage Investments'] tender and to assist in satisfaction of the judgment," *Osborn*, 32 Colo. App. at 258, 510 P.2d at 463-64; *see also Plute*, 101 Colo. at 161-62, 71 P.2d at 804.

¶ 36     This result is consistent with the purpose of the redemption statute.  The General Assembly did not provide junior lienors the right of redemption to give real estate speculators an alternative means for acquiring foreclosed properties.  Rather, as courts have repeatedly stated, the purpose is to help creditors protect their interests in repayment of debts. *Plute*, 101 Colo. at 161-62, 71 P.2d at 804.

¶ 37    And, in this case, we hold only that, prior to the start of a junior lienor's redemption period and before a junior lienor tenders redemption funds, a certificate of purchase holder may pay, on behalf of the debtor, existing liens encumbering a foreclosed property. In the event that a certificate of purchase holder does so, the junior lienor will have received his or her just demand: payment of the judgment underlying the lien. *See id.* In such cases, redemption is therefore unnecessary because the junior lienor would no longer have a need to "protect [a] security interest[], which would be lost upon transfer of title to the purchaser" of the foreclosed property. *WYSE*, 92 P.3d at 921.

¶ 38    Moreover, a contrary holding would, in our view, discourage participation in foreclosure sales. Indeed, it would make little sense for a party to compete to purchase property at a foreclosure sale if a certificate of purchase holder had no ability to pay, on behalf of the debtor, liens encumbering foreclosed property, despite the fact that the period for redemption had not started. Instead, the party could simply (1) acquire the most junior lien; (2) reject tender of payment in satisfaction of the lien made prior to the start of the redemption period; and (3) wait at the back of the line to exercise an absolute

right to redeem. Consequently, a contrary holding would encourage a race to acquire the most junior lien, rather than participation in the foreclosure sale.

¶ 39    As Oakwood acknowledges, the purpose of the foreclosure statutes is to use a debtor's property to pay off as many creditors as possible. *See Ameriquest Mortg. Co. v. Land Title Ins. Corp.*, 216 P.3d 597, 602 (Colo. App. 2007), *rev'd on other grounds*, 207 P.3d 141 (Colo. 2009). And, presumably, more competition at foreclosure sales will lead to higher purchase prices. Accordingly, we cannot conclude that the General Assembly intended parties to use the right of redemption as a work-around for the usual process of competing to purchase foreclosed property.

¶ 40    Lastly, we are not persuaded by Oakwood's reliance on failed Colorado Senate Bill 10-093, which would have given certificate of purchase holders the right to compel junior lienholders to accept a post-foreclosure tender of payment in lieu of redemption. *See* S.B. 10-093, 67th Gen. Assemb., 2nd Reg. Sess. (Colo. 2010). Because a particular item of legislation may fail for many reasons, we do not infer legislative intent from the General Assembly's failure to enact

proposed legislation. *Ritter v. Jones*, 207 P.3d 954, 962 (Colo. App. 2009).

## IV.  Conclusion

¶ 41   Mortgage Investments tendered payment on behalf of the debtor in satisfaction of the judgments and lien Oakwood had purchased. And it did so before the period for redemption had begun and before Oakwood tendered redemption funds. Accordingly, Oakwood had not yet made or accomplished a redemption, so its duty as a creditor was to "accept the tender and to assist in satisfaction of the judgment." *Osborn,* 32 Colo. App. at 258, 510 P.2d at 463-64.

¶ 42   We therefore reverse the district court's judgment and remand the case with directions to enter summary judgment in favor of Mortgage Investments.

JUDGE GRAHAM and JUDGE RICHMAN concur.